DOROTHY WINGATE, APPELLEE, v. EVANS MODEL LAUNDRY ET AL., APPELLANTS.

FILED OCTOBER 21, 1932. No. 28553.

*Story & Thomas,* for appellants.

*Anson H. Bigelow, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

PAINE, J.

This is a claim for compensation by Dorothy Wingate, a laundry employee, for an accident in a laundry. It is admitted that she suffered injury to her back, the exact nature of which is in dispute. She was operated on, and

was paid compensation for nine weeks. Upon a hearing before the compensation commissioner, her cause of action was dismissed. Upon an appeal to the district court, a decree awarded her, first, $185 for the services of her physician, second, compensation at the rate of $13.33 a week from October 26, 1931, for temporary total disability, to be paid until further order of the court, and, third, the defendants were directed to furnish her proper medical treatment by physicians selected or approved by her for the purpose of removing all or part of her disability, to each of which the appellants object.

Dorothy Wingate, an unmarried woman, was employed, at $20 a week, as floor lady, or assistant to the superintendent, by the Evans Model Laundry, of Omaha, and met with an accident on Friday, August 14, 1931. She had about 45 girls under her supervision, but was required, in addition to making out payrolls, to do a commercial checker's work on hotel and commercial linen. On the above day she had to sack, weigh and check five large bags of wiping rags for the Ford Motor Company. She had packed and checked five large sacks, and in attempting to take the last one, weighing 102 pounds, to the scales, across a slippery floor, she twisted and strained herself in lifting the bag to get it on the scales. She felt a sudden pain in her abdomen and back, became faint, sat down with her head on the sack for several minutes. She told her superintendent right then that she had hurt herself and ought to have help to lift such bags, but the superintendent started an argument about it, and said: "If you don't want to do it you can go home; that is your job." Saturday she worked until about 2 o'clock, lying down during the noon hour. She was in bed all day Sunday, but Monday morning was not able to work.

Dr. Schleier, the company's surgeon, not being available at the time, the manager sent her to Dr. Max Flothow, a specialist in diseases of women, who told her she had torn the muscles and support of her abdominal organs loose, and directed her to go home and go to bed

and stay off her feet, and taped up her abdomen. She told him the laundry company had no one to take her place and she would have to work until she could break somebody else in to take her job. She stayed there the remainder of that week and the next, breaking in a second girl, who did the heavy work.

Dr. Flothow, who had been giving her treatments, ordered her to St. Catherine's Hospital. She complained only of a severe pain in her back, but he diagnosed her case as a "prolapsed uterus, second degree, traumatic in origin." Dr. Schleier, a specialist in surgery, could find no evidence of prolapse, and advised against the operation, which advice Miss Wingate did not learn of until long after the operation. Her pain has never been relieved. The defendants paid Dr. Flothow for the major operation which he insisted upon performing upon August 31, paid the hospital, and paid Miss Wingate nine weeks' compensation, but refused to pay for the services of the doctor of her choice, who was Dr. Egan, who had assisted in the operation and subsequently treated her, at Dr. Flothow's request, for anæmia secondary to operation, and tried to build up her strength, and fitted her with a belt, which did not relieve her, but which the insurance carrier paid for.

She endeavored to get work at various places, but could not get or hold a job, as the severe pain in her back was continuous, and she could not even do housework to help pay for her board and room. She would be up one day and go back to bed the next day.

The company doctors failing to benefit her or relieve her injured back in any degree, upon December 1, 1931, she went to see Dr. Sucha, an orthopedic surgeon, who told her she had torn muscles in the back and that she could never lift anything again, and that at least part of her injury was permanent.

On February 14, 1932, Miss Wingate, becoming greatly worried and getting no relief, came to Lincoln and consulted the firm of Drs. Orr & Thomson, orthopedic ex-

perts. Many X-ray photographs were taken by Dr. Rowe, the Roentgenologist of Bryan Memorial Hospital.

Dr. J. E. M. Thomson, after a complete examination, aided by many X-rays, testified that the operative wound in her abdomen had closed with a keloid formation, raised, thickened, hard scar, which is tender to touch or move, the tenderness extending out on both sides, more on the right side, and somewhat spastic. Her whole back is tender; the X-rays showed she had a fracture of the transverse process of the fifth lumbar vertebra on the left side; calcification of the line of fracture had not taken place. Testified that the fact of the existence of these conditions six months after her injury strengthened the idea of the permanence of her disability.

Dr. Edward W. Rowe took X-ray photographs in February, 1932, and others on May 7, 1932, and testified to the same facts as Dr. Thomson. He found she had great pain when she bent forward or backward or to the right or left, and there was marked tenderness over this fractured transverse process of the fifth lumbar vertebra.

Among the errors relied upon for reversal are the following: First, that the district court erred in finding that her disabilities are the result of an injury which occurred in lifting heavy sacks upon August 14, 1931; second, that the disability from such injury has continued up to the present time, and is still continuing; third, the court erred in directing that the services of the physician selected by the employee should be paid by the company; and fourth, that the district court erred in making the finding that the employee was entitled to receive further medical treatment by physicians to be selected or approved by her for the purpose of removing all or part of the disability now existent arising from her back injuries.

In compensation cases, it is a general rule, in all states except Massachusetts, Rhode Island and Washington, that the employer selects and provides medical and hospital treatment, it being to his interest to furnish the very best medical and surgical treatment in order to mini-

mize the result of the injury and better control malingering. It has been held in grave emergencies, however, that, where a physician must be secured at once, it is not incumbent upon the employee to waste time in first notifying the employer, who will be responsible for such emergency medical treatment rendered by the physician selected by the injured employee. 2 Schneider, Workmen's Compensation Law, 1225.

Few cases can be found covering the point in issue, but it has been held, where an employee was dissatisfied with the advice given by the surgeon first selected by the insured and then directed to go to another, who was out of town, and the employee then went to his family physician for treatment, that the insurer was liable for such treatment on the ground of having neglected to provide the surgical treatment reasonably required, the circumstances justifying the employee in securing the services of a practitioner of his own selection.

If the employee can prove that the service supplied by the employer was inadequate or inefficient to an extent that justified the employee in abandoning it, the employer may be compelled to pay for such service. *Massachusetts Bonding & Ins. Co. v. Pillsbury*, 170 Cal. 767; 28 R. C. L. 822.

It was held that, where the services furnished by the employer were inadequate or inefficient, the employee is justified in changing to his own physician, and he will be allowed reasonable costs of such services. *Kelley v. Pacific Electric R. Co.*, 1 Cal. I. A. C. Dec. 150.

When a physician furnished by the employer or insurance carrier makes a wrong diagnosis, the extended disability resulting therefrom is compensable. *Johnson v. Pacific Surety Co.*, 1 Cal. I. A. C. Dec. 560.

When a workman is hurt and removed to a hospital, or is put under the care of a surgeon, he is still, within every intendment of the law, in the course of his employment and a charge upon industry, and so continues as

long as his disability continues. *Ross v. Erickson Construction Co.*, 89 Wash. 634.

It has been held that, when one might have found some work which he could do sitting down, it will not render his disability partial. *Duprey's Case*, 219 Mass. 189; Ann. L. R. A. 1916A, 380.

In this case, the employee, being still totally disabled, and having received no benefit from the treatment given her by any of the doctors furnished by the employer, and becoming desperate of ever being benefited by them, she having suffered a major operation at their hands, was warranted in selecting other experts to take additional X-rays and make a new diagnosis, through which it was ascertained for the first time, six months after the date of her injury, that the exact injury she suffered when lifting the heavy bags in the laundry was a fracture of a portion of a vertebra and attendant injury to muscles.

As to whether the injuries are permanent is a closely contested question. Appellants urge that the question of total disability is not disposed of by the fact that it is impossible for her to perform the duties that she was performing when she was injured, but insist there may be some other occupation in which she might earn something. Several laundries have refused to hire her because of the disabilities under which she is suffering.

A workman, who, solely because of his injury, is unable to perform or to obtain any substantial amount of labor, either in his particular line of work, or in any other for which he would be fitted except for the injury, is totally disabled within the meaning of the workmen's compensation law.

There can be no award for medical attendance where the injured employee did not first seek aid from the employer but secured a physician of his own choosing. *Swift & Co. v. Industrial Commission*, 288 Ill. 132.

It has been held by this court in *Radil v. Morris & Co.*, 103 Neb. 84, 7 A. L. R. 539, that an employer could not be held liable for medical services secured by an employee

who had refused such services and medicines furnished by the employer, but the facts are entirely different from the case at bar.

It has been held that, where doctors disagree as to the probable success of an operation, the trend of the decisions is that a refusal by employee to submit to the operation under such circumstance is not unreasonable.

If Miss Wingate had known that Dr. Schleier had disapproved of an operation for a prolapsed uterus in her case, she would never have consented to have it done. When an employee is subjected to a painful and unnecessary operation, by reason of which her disability is increased and physical tenderness, pain and weakness still continue, she should be allowed compensation. In this case she requested her own physician, Dr. Egan, to perform the operation, in case it had to be done, but he hesitated because she was already in the hands of the doctor of the insurance carrier. However, he was asked to be present and act as assistant, and treated her for the anæmia and other post-operative troubles. Doubtless the burden is upon the employee to establish that such charges made by her own physician are reasonable, but, when so established, the full amount due for such services rendered under the facts in this case should be ordered paid.

We have examined this record of 338 pages, and the four packages of large X-ray photographs, and are convinced that the appellants are correct in contending that they are entitled to a final determination of this case in the district court. That court should enter an order making a final determination of the character of the disability and of the full amount to be paid, the times of payment, and all other provisions necessary to make a complete disposition of the case. *Schlesselman v. Travelers Ins. Co.*, 111 Neb. 65.

This court has profound respect for the opinions of the learned and experienced trial judge, as we have stated before, and believe that his intention was to obtain results for the best interests of the parties; however, we

have very recently held in *Steinheimer Co. v. Podkovich,* 122 Neb. 710, that failure of the district court to make a final disposition of compensation cases constitutes error, for which the judgment must be reversed and the cause remanded.

REVERSED.