HAROLD E. WILSON, APPELLANT, V. BROWN-McDONALD COM-
PANY ET AL., APPELLEES.

278 N. W. 254

FILED MARCH 4, 1938. No. 30329.

*H. G. Wellensiek*, for appellant.

*Kennedy, Holland, De Lacy & Svoboda* and *Edwin Cassem, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, CARTER and MESSMORE, JJ., and WILLIAM A. DAY, District Judge.

MESSMORE, J.

This is an appeal from the district court for Merrick county, wherein such court affirmed an award made by the compensation court, and in addition thereto allowed attorney's fees for the claimant's attorney in the sum of $300. The claimant appeals to this court from such award and finding as made by the district court, and the defendants cross-appeal on the question of attorney's fees. The pleadings are proper in form to present the issues contended for in this court.

A brief summary of the evidence, as disclosed by the record, follows: The accident in question occurred on September 7, 1931. The claimant had graduated from high school; had received one and a half years of college education; was 20 years old at the time of the accident;

had done retail sales work in a grocery store, clothing store and in obtaining work for a laundry. His wages were $75 a month. He had worked steadily for a period of two years. The accident was caused when the claimant was taking some papers to be burned in an incinerator back of the store of the Brown-McDonald Company, and when he put the papers into a barrel that was used as an incinerator there was an explosion, as a result of which he received severe third-degree burns over his entire face. He received emergency treatment, was taken by ambulance to St. Francis Hospital in Grand Island, Nebraska, remained there for three months under the care of doctors; then placed in the care of a plastic surgeon, at Milwaukee, Wisconsin, remained there from January, 1932, until the beginning of August, 1935, a great portion of which time was spent at St. Mary's Hospital in Milwaukee, and subsequently he was sent to a hotel in Milwaukee. The insurance carrier paid the sum of $11.54 a week as compensation up to August 10, 1935, when payments ceased. The insurance carrier then endeavored to procure a settlement with the claimant, in which they offered him $800 in full settlement, which was declined.

There appears in the record the testimony of John Knickrehm, retail grocer, of E. E. Clark, grocer, of the managers of the Brown-McDonald store and the Penney store, and of L. S. Norstedt, a merchant, and R. Tooley, a merchant, to the effect that they would not employ the claimant in their places of business on account of his facial disfigurement, which is described as "terrible." The only employment that the claimant has had since the accident was invoicing for a few days. Some argument is made to the effect that the claimant has not made a sincere effort to obtain employment. The fact remains that the concerns for whom he worked at the time of his accident, and which employ many people in the different departments of their business, such as bookkeepers, clerks, and deliverymen, have not reemployed the claimant. The plastic surgeon's testimony is that the appearance of claimant's

face is steadily improving and the skin is looking better; that the surgical treatments stopped on August 10, 1935, and that the disfigurement would gradually lessen; that it was difficult to estimate the amount of surgical work that may be required, but that a person suffering from facial disfigurement is ordinarily sensitive about it, and where there is some detail work to be done, if it can be done handily after a certain healing period, then it might be the thing to do; that he had not discharged the claimant.

The testimony of the doctor, called for defendant, is, in substance, that the claimant is not suffering from any physical disability and is not physically incapacitated to perform manual labor. The witness believed that the disfigurement could be lessened by a further operation, and that it was a handicap to claimant in employment where he would have to meet the public, but that he had such a personality that people would learn to like him; that certain plastic treatment ought to be had because the "inner angle of his left eye is broadened, that can be brought down, his left eye can be rather easily fixed;" that the condition of his skin is better.

This case is tried *de novo* in this court. The record discloses that, previous to the award made by the compensation court and the district court, there had been expended compensation to the claimant for 204 weeks, amounting to the sum of $2,354.16, and in addition thereto medical expenses in the sum of $10,924.91, or a total expenditure of $13,279.07. The hearing before the compensation court was had on November 25, 1936, award being made on March 16, 1937, granting claimant temporary total disability at $11.54 a week from September 7, 1931, to November 25, 1936, less $2,354.16 paid, plus $190 paid out by the claimant for living expenses, and the compensation court found that claimant was not entitled to compensation for disfigurement and made no allowance for attorney's fees. Claimant then appealed to the district court, praying for a modification and additional compensation; that is, for total temporary disability, until his permanent dis-

ability was ascertained; for total permanent disability; for additional medical 'and surgical and hospital treatments; for 50 per cent. penalties for compensation unpaid; and for attorney's fees. The district court sustained the compensation court in its findings and allowed $300 attorney's fees.

The claimant seeks to reverse the finding and holding of the district court that the claimant was not entitled to compensation for permanent total disability for severe facial disfigurement.

The workmen's compensation act of the state of Nebraska does not contain specific language having to do with facial disfigurement of a severe nature. Claimant cites section 48-121, Comp. St. 1929. This section provides a schedule of compensation, established for injuries resulting in disability. It then gives a résumé of the amount of wages and *per centum* thereof that may be recovered for total disability not to exceed 300 weeks; provides for total disability for the lifetime of the employee and fixes the *per centum* for partial disability followed by total disability, and for disability partial in character, with the exception of particular cases which are set out in subdivision 3 of said section. Subdivision 3 fixes amounts for disability resulting from permanent injury, in addition to the amount paid for temporary disability; "provided, however, the compensation for temporary disability shall cease as soon as the extent of the permanent disability is ascertained;" then fixes compensation for the loss of certain members of the body, and further fixes compensation, amount thereof and the length of time such payments are to run, for the loss of the use and function of certain members of the body, etc.

In section 48-121, Comp. St. 1929, we find this language: "Should the employer and the employee be unable to agree upon the amount of compensation to be paid *in cases not covered by the schedule,* the amount of compensation shall be settled according to the provisions of section 3680 (48-139)." (Italics ours.) Section 48-139 has been repealed

(Laws 1935, ch. 57, sec. 24), and in place thereof we have section 13, ch. 57, Laws 1935, which section enlarges upon section 48-139 to some extent, qualifies the procedure and makes some addition thereto, but retains the remedy provided in section 48-139 in all cases of dispute with reference to workmen's compensation. In addition thereto, section 11, ch. 57, Laws 1935, provides: "All disputed claims for workmen's compensation shall be submitted to the Nebraska workmen's compensation court for a finding, award, order or judgment."

Section 48-101, Comp. St. 1929, contains this provision: "When personal injury is caused to an employee by accident arising out of and in the course of his employment," etc. Thus, where an employee receives personal injuries in the course of his employment, section 48-121, Comp. St. 1929, provides for compensation to be paid him for such personal injuries. The personal injury in this particular case not having been designated by the act, we then refer to that part of the act, as above set out, namely, *"in cases not covered by the schedule,"* which necessarily means all other cases that are not designated in the schedule but which would naturally fall within the provisions of the act.

Section 6, ch. 57, Laws 1935, provides, in substance, that the compensation court may adopt all reasonable rules necessary for carrying out the intent and purpose of the act, and shall administer and enforce all of the provisions of the Nebraska workmen's compensation law and acts amendatory thereof, except such as are committed to courts of appellate jurisdiction. The appellate court, in a trial *de novo,* would then have the same power and authority, as granted to the compensation court by law, to fix the degree of disability and determine the award, if any, due claimant.

In the case of *Everhardt v. Newark Cleaning & Dyeing Co.,* 117 N. J. Law, 581, 189 Atl. 926, involving disfigurement of an employee's face badly scarred by acid, the New Jersey supreme court held the facial disfigurement

not compensable, even though it lessened the employee's earning power, since the New Jersey statutes provided for compensation for disability and for disability alone, disability defined in that case being that which disqualifies an employee from doing work, in whole or in part. The opinion was filed by the supreme court of New Jersey February 6, 1937, and was definite in that if disfigurement, standing alone, is to be made the basis of compensation the same must be done by the legislature and not by an extension of the act by judicial construction. The opinion cited provisions of the New Jersey statutes, which we shall later refer to. The case of *Everhardt v. Newark Cleaning & Dyeing Co.* was subsequently taken to the court of errors and appeals of New Jersey, and an opinion in that court released on September 22, 1937, in which the holding by the supreme court of New Jersey was reversed. *Everhardt v. Newark Cleaning & Dyeing Co.,* 119 N. J. Law, 108, 194 Atl. 294.

It is contended by the appellees that the holding in the *Everhardt* case in the court of errors and appeals was to the effect that because said court had, in a memorandum opinion 15 years previously, permitted recovery for facial disfigurement, the nonexercise of the amendatory power by the legislature during the intervening period is sufficient legislative acquiescence and ratification. A careful reading of the opinion by the court of errors and appeals discloses the following: The New Jersey act provided for compensation according to a schedule which is contained in paragraph 11 of such act, which paragraph was amended by Pamph. L. 1928, p. 281, section **236-11, Comp. St. Supp. 1930, and provides (a) "for injury producing temporary disability," (b) "for disability total in character and permanent in quality," and (c) "for disability partial in character, but permanent in quality," to be based on the extent of such disability. This latter subdivision then goes on to schedule specific compensation for loss of a member, or where the usefulness thereof or of any physical function is permanently impaired proportionate compensation shall

be paid. Similar language appears in our compensation law. Comp. St. 1929, sec. 48-121.

Referring to the language "in all lesser or other cases involving permanent loss," which appears in the new Jersey law, the court of errors and appeals, in *Everhardt v. Newark Cleaning & Dyeing Co.,* 119 N. J. Law, 108, 194 Atl. 294, said: "If it be held that the significance of the adjective 'lesser' is limited by the prior provisions for arbitrary allowances for the loss of a member or physical function, without regard to actual disability during the prescribed compensation period, the subsequent adjective 'other,' qualifying the same noun 'cases,' is demonstrative of a legislative purpose to include all other personal injuries 'involving permanent loss,' in the sense of disability." The construction of this language in the New Jersey court seems to be the principal reason for the court's decision. While the language in our statute is not identical with that of the New Jersey statute, it is so closely related that there is very little distinction, if any, in the meaning of the various types of relief granted. Instead of using the words *"in all lesser or other cases involving permanent loss,"* as found in the New Jersey compensation law, the Nebraska law, after setting forth the schedule, uses the words: "Should the employer and the employee be unable to agree upon the amount of compensation to be paid *in cases not covered by the schedule."*

The test of liability, as stated by the New Jersey court of errors and appeals in the *Everhardt* case, "is not the immediate impairment of earning power; it is rather the loss ensuing from personal injury which detracts from the 'former efficiency' of the workman's 'body or its members in the ordinary pursuits of life.'" The English case of *Ball v. William Hunt & Sons, Ltd.,* (1912) App. Cas. 496, 5 B. W. C. C. 459, was cited in the opinion. Without discussing the English case, suffice it to say that the court placed an interpretation on the British workmen's compensation act, permitting recovery for facial disfigurement, when the act had no specific provision therefor. The House

of Lords has apparently settled the question because it has, in unequivocal terms, laid down the proposition that incapacity for work may mean physical inability to do work so as to earn wages, or it may mean inability to secure employment, due to the belief of employers in the unfitness of the workman to perform work owing to the injuries they perceive he has sustained. The court was interpreting the 1906 British workmen's compensation act which was a prototype of the New Jersey act, as stated in the *Everhardt* case. The New Jersey court of errors and appeals, in allowing recovery in the *Everhardt* case, followed the English case of *Ball v. William Hunt & Sons, Ltd., supra.*

Appellant cites *Beal v. El Dorado Refining Co.*, 132 Kan. 666, 296 Pac. 723. Plaintiff in that case suffered injuries constituting a partial loss of the sight of one eye, and a partial loss of hearing in both ears, and was disfigured for life. The supreme court of Kansas applied the schedule and permitted recovery for the disfigurement, holding that impairment of earning power may result in ineligibility to obtain work to do, as well as inability to perform the work. The court in that case was interpreting paragraph 22 of the Kansas workmen's compensation act (R. S. Supp. 44-510), and permitted recovery for disfigurement under paragraph 22, wherein we find this language: "*Should the employer and the employee be unable to agree upon the amount of compensation to be paid in any case of injury not covered by the schedule,* the amount of compensation shall be settled according to the provisions of this act as in other cases of disagreement." (Italics ours.) Then follow certain provisos, which it is unnecessary to relate here. The value of this Kansas case to the case at bar is to disclose that the language in the Kansas compensation act is similar to that in section 48-121, Comp. St. 1929, wherein it was stated, "*in cases not covered by the schedule.*" Neither our compensation act nor that of Kansas covered facial disfigurement, but recovery was permitted by the supreme court of Kansas in the above case under almost

the identical language as contained in section 48-121, *supra*.

Appellant cites *Ossic v. Verde Central Mines,* 46 Ariz. 176, 49 Pac. (2d) 396, filed September 23, 1935. In the state of Arizona disfigurement was included in the original compensation act, which was adopted and included in the Constitution of the state. The court said in the opinion that the legislature recognized that all injuries were not covered by the schedule in Arizona, and that "for unscheduled injuries, either total or partially permanent in their nature, compensation shall be awarded in accordance with the facts of the case." The value of the cited case is that the Arizona court stressed the fact that one must look to the act itself and its meaning, and if there be no specific provisions relative to the subject-matter, the general purpose of the act should be so construed as to effectuate that purpose in justice to all interested parties.

Appellant cites *Maryland Casualty Co. v. Geary,* 123 Neb. 851, 244 N. W. 797, wherein this court said (p. 855) : "It has long been the policy of this state to give a liberal construction of the workmen's compensation law, so that its beneficent purposes might not be thwarted by technical refinement of interpretation." And appellant also cites *McGuire v. Phelan-Shirley Co.,* 111 Neb. 609, 197 N. W. 615; *Baade v. Omaha Flour Mills Co.,* 118 Neb. 445, 225 N. W. 117; *Speas v. Boone County,* 119 Neb. 58, 227 N. W. 87, holding to like effect.

Appellant cites *Wingate v. Evans Model Laundry,* 123 Neb. 844, 244 N. W. 635, wherein we held: "A workman, who, solely because of his injury, is unable to perform or to obtain any substantial amount of labor, either in his particular line of work, or in any other for which he would be fitted except for the injury, is totally disabled within the meaning of the workmen's compensation law." This holding is quoted in *Flesch v. Phillips Petroleum Co.,* 124 Neb. 1, 244 N. W. 925. In the above cases, the injuries sustained by the employees related to bodily functions which prevented them from carrying on the work for which they had been previously trained. The principle of

law announced would be the same and apply to any injury suffered by an employee.

Appellees, contend that to allow claimant to recover for total disability would amount to judicial legislation, in supplying that, which the legislature had failed to include in the act. They cite *Hyett v. Northwestern Hospital*, 147 Minn. 413, 180 N. W. 552, filed December 24, 1920. The Minnesota compensation act did not contain a provision covering facial disfigurement. The plaintiff sought to bring an action for common-law negligence. The court held, in effect, that, having predicated his action on the compensation act, he could not bring an action for common-law negligence; that, if the compensation act did not cover facial disfigurement, it was within the province of the legislature to so amend the act. The act was amended in 1923 to cover facial disfigurement and an award made therefor.

Appellees cite *Boyer v. Crescent Paper Box Factory*, 143 La. 368, 78 So. 596. Without detailing the facts in that case, except to say that plaintiff was severely injured when she caught her hair in some machinery and was scalped, the original compensation act did not provide for compensation for disfigurement to the face or head. The plaintiff contended that she did not come within the provisions of the act. Subsequently, the act was amended to cover facial disfigurement of a serious and permanent nature. The court held that the subsequent amendment, which included the injury suffered by the plaintiff, did not affect her previous right to maintain a common-law action outside of the original act, where said action was started previously to the amendment.

In *Shinnick v. Clover Farms Co.*, 169 App. Div. 236, 154 N. Y. Supp. 423, cited by appellees, the compensation act did not provide for recovery for the loss of a part of an ear. The court said: "If the schedules do not cover the injury suffered by an employee he does not fall within the purview of the act and cannot claim compensation under it, for the act provides no scale or gauge by which to de-

termine what compensation should be provided." It was said that such an injury, having no tendency to impair the efficiency of the injured person in his employment, was not covered by the act.

In *Matter of Sweeting v. American Knife Co.*, 226 N. Y. 199, 123 N. E. 82, cited by appellees, the court held that an amendment to the workmen's compensation act providing for an award for serious facial or head disfigurement was constitutional so far as facial disfigurement was related to the loss of earnings. In *American Knife Co. v. Sweeting*, 250 U. S. 596, which affirmed *Matter of Sweeting v. American Knife Co.*, *supra*, the court said (p. 601):

"Even were impairment of earning power the sole justification for imposing compulsory payment of workmen's compensation upon the employer in such cases, it would be sufficient answer to the present contention to say that a serious disfigurement of the face or head reasonably may be regarded as having a direct relation to the injured person's earning power, irrespective of its effect on his mere capacity for work.

"Under ordinary conditions of life, a serious and unnatural disfigurement of the face or head very probably may have a harmful effect upon the ability of the injured person to obtain or retain employment. Laying aside exceptional cases, which we must assume will be fairly dealt with in the proper and equitable administration of the act, such a disfigurement may render one repulsive or offensive to the sight, displeasing, or at least less pleasing, to employer, to fellow employees, and to patrons or customers."

We have quoted the above language to disclose the trend of thought in such cases.

Appellees cite *Hull v. United States Fidelity & Guaranty Co.*, 102 Neb. 246, 166 N. W. 628, where a lineman, while working on a pole, fell to the ground and sustained a compound fracture of his left thigh bone and other injuries. As a result, his left leg was shortened an inch or more and his left knee and ankle were rendered stiff and incapable

of normal motion. He had no other business than that of a telephone lineman and was disabled thereafter from following that occupation. This court permitted recovery for the loss of a leg, 50 per cent. of the amount of his wages for 200 weeks, stating that the compensation for permanent loss of the use of a leg, unaccompanied by any other physical injury or loss of health, cannot exceed the amount specified under the law. This recovery was under a schedule as provided by law for the loss of a leg.

Appellees also cite *Schroeder v. Holt County*, 113 Neb. 736, 204 N. W. 815. The court held, under subdivision 3, sec. 3044, Comp. St. 1922 (now section 48-121, Comp. St. 1929) : "An employee who receives an injury not affecting any other part of his person, but totally and permanently destroying the use of one leg, is only entitled to recover as if the leg had been removed." Such injuries may be so defined and classified that the appropriate compensation may, with a fair average of justice, be estimated in advance. Cases of severe facial disfigurement have their special problems. It is difficult, but not impossible, to define and classify the injuries.

The above cases can be distinguished from the case at bar, in that the instant case is not covered by schedule, but recovery is permitted by the use of the language, "in cases not covered by the schedule," contained in section 48-121, Comp. St. 1929, which leaves the matter of award and the degree of disability for this court to determine. In this connection we must remember that the legislature, when it enacted the compensation act, took from the claimant his common-law action for damages for negligence. Is it reasonable to believe that the legislature intended no compensation for him, leaving him without a remedy? The word "disability" in the law means impairment of earning capacity and not loss of a member. *Matter of Marhoffer v. Marhoffer*, 220 N. Y. 543, 116 N. E. 379. Disability has been defined as being that which disqualifies an employee from doing work, in whole or in part. *Everhardt v. Newark Cleaning & Dyeing Co.*, 119 N. J. Law, 108, 194 Atl. 294.

In the instant case, the evidence discloses that the claimant was severely burned about the face and shockingly disfigured. To say the least, his facial appearance and disfigurement are of such a character that he will be greatly handicapped in procuring employment in the open labor market. The evidence adduced in the record is clear in this respect. There can be no doubt of his total disability prior to the time the payments of compensation ceased. He had worked as a salesman for grocery and clothing concerns and had solicited business for a laundry. He had worked steadily for a period of two years. Such employment was the only employment for which he was equipped. His injuries are the sole and only reason for his inability to obtain or perform work in the line for which he has been trained or is fitted. If he obtained employment, he could not perform the work. The very nature of his work would require him to meet the public, where appearance most assuredly would seriously handicap him in using his ability as a salesman and place him at a great disadvantage in competition with other salesmen, and, in fact, would rule him out altogether.

Appellees set forth many occupations and professions that claimant might learn and follow, most of which would require a degree of technical knowledge and training, for which he is totally unfitted, and his prospects of earning a livelihood in such occupations would be speculative and conjectural.

Appellees cite several instances where different states have amended their compensation laws to cover facial disfigurement of a severe nature, and have fixed therein the length of time payments were to run and the maximum amount to be paid therefor, and point out that the claimant has received more than any of such states allow for disfigurement. Apparently, this is true, and, without question, appellees have made a sincere effort to rehabilitate the claimant to take his place in the world. Without repeating, suffice it to say that the very nature of the third-degree burns, resulting in the severe facial disfigurement

of the claimant, totally and permanently disable him, and for the reasons stated in this opinion we believe that he was totally disabled from the date of the accident, and that, as provided by section 48-121, Comp. St. 1929, he is entitled to recover for a period of 300 weeks for total disability the sum of $11.54 a week, the same constituting 66 2/3 per cent. of his wages at the time of the injury, and after the period of 300 weeks he is entitled to receive 45 per cent. of the amount of his wages at the time of the injury, or the sum of $7.79 a week, for the remainder of his life for total disability. Comp. St. 1929, sec. 48-121. Defendants are to be credited with compensation paid.

The appellant contends that he is entitled to additional medical, surgical and hospital expenses. An examination of the evidence in this respect clearly discloses that the assistance that may be given by the plastic surgeon would, to a minor extent, be in the appearance of the claimant, and that improvement is doubtful.

The appellant contends that penalties should be assessed against defendants. A reasonable controversy existed between the claimant and the defendants, and an examination of the record discloses that the conduct of the defendants was, at no time, such that a penalty should be attached. Without citing the cases, we are convinced that a reasonable controversy existed between the claimant and the defendants. *Claus v. DeVere*, 120 Neb. 812, 235 N. W. 450.

An allowance of attorney's fees to employee's attorney is erroneous where the evidence discloses that an employer has not refused or neglected to pay compensation, and has not appealed from an award made to the employee by the workmen's compensation court, or the district court.

The judgment of the district court is hereby reversed, and such court is directed to enter judgment in conformity with this opinion.

REVERSED.