THOMAS A. MICEK, APPELLEE, v. OMAHA STEEL WORKS, APPELLANT.

287 N. W. 645

FILED SEPTEMBER 29, 1939. No. 30479.

*Clarence T. Spier* and *Arthur C. Bailey,* for appellant.

*Reeder & Reeder, contra.*

*Kennedy, Holland, DeLacy & Svoboda, Edwin Cassem, Hall, Cline & Williams* and *Flavel A. Wright, amici curiæ.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ., and KROGER, District Judge.

JOHNSEN, J.

The previous opinion in this case is reported in 135 Neb. 449, 282 N. W. 262. Argument was allowed on the motion for rehearing, and various members of the bar have filed briefs as *amici curiæ.*

Criticism is made of our decision, on the ground that it awards compensation for total permanent disability to a workman who has demonstrated that he is still possessed of a substantial and continuing earning power in other employment.

Without repeating all the facts, it will be recalled that plaintiff suffered a fracture of his first lumbar vertebra, with accompanying nerve injuries. In consequence, his strength has been affected and he tires somewhat easily, is chronically constipated, and has to exert effort in urination. At the time of the accident, he was employed as a laborer on bridge construction work, receiving 30 cents an hour for a 30 hour work-week, or a weekly wage of $9. Subsequently, he obtained a job as a bartender and liquor store clerk, working 72 hours a week, at a weekly wage of $15. When the district court made its compensation award herein, he had been holding the latter job for more than three years.

The first paragraph of the syllabus of our previous opinion declares that an employee is not necessarily precluded from recovering compensation, under the workmen's compensation law, by the mere fact that after the injury he receives a larger sum, as wages, than his former remuneration. With this general principle there can be no sound disagreement. It is in accord with our previous expression (*Epsten v. Hancock-Epsten Co.*, 101 Neb. 442, 163 N. W. 767), and is amply supported by other decisions. 17 A. L. R. 205, annotation; 118 A. L. R. 731, annotation.

The opinion, however, goes further and (except as to the specific disabilities covered by subdivision 3 of section 48-121, Comp. St. 1929) holds, in effect, that unless a workman is able to do the same work as, or similar to, that in which he was engaged at the time of the accident, he is entitled to compensation for total disability, even though he is able to obtain, hold and perform work at substantial wages, in another established field of employment for which he is fitted. This is contrary to our previous declaration in *Wingate v. Evans Model Laundry*, 123 Neb. 844, 244 N. W. 635, and the several cases which have followed it. In these cases we recognized that total disability, under subdivision 1 of section 48-121, Comp. St. 1929, can only be held to exist where a workman is unable to get, hold or do any substantial amount of remunerative work, either in his previous occupation or in any other established field of employment for which he is fitted. The same view was expressed in the earlier case of *Johnson v. David Cole Creamery Co.*, 109 Neb. 707, 192 N. W. 127.

Plaintiff argues that *Wilson v. Brown-McDonald Co.*, 134 Neb. 211, 278 N. W. 254, and *Ludwickson v. Central States Electric Co.*, 135 Neb. 371, 281 N. W. 603, support our previous opinion in this case. It will be noted, however, that both these cases cite and purport to follow the rule of *Wingate v. Evans Model Laundry, supra,* and their facts are within the definition of total disability there recognized. In the *Wilson* case, hideous disfiguration prevented plaintiff from obtaining sustained employment in any field for which he was fitted. In the *Ludwickson* case, likewise, plaintiff had not procured or performed work in any established field of employment. The fact that he was able temporarily to earn $40 a month as a "graduate assistant," while attempting to rehabilitate himself at the state university, did not cause him to be any the less totally disabled, since the tasks which he did, to help defray his educational expenses, could hardly be said to constitute a sustained occupation or an established field of employment.

The rule recognized in the *Wingate* case, *supra,* that disability cannot be termed total, under the workmen's compensation law, if the claimant's earning power is not wholly destroyed and he is still capable of obtaining and performing remunerative employment, is sound and should be adhered to, 28 R. C. L. 820, sec. 106; 67 A. L. R. 790, annotation; 98 A. L. R. 732, annotation. If we are to hold a workman totally disabled who, for more than three years, following an accident, has proved an existing earning power, by getting, holding and doing remunerative work in an established and recognized field of employment, we shall be ignoring a common sense reality and bowing to medical or legal fiction. If, as plaintiff contends, disability is to be measured solely by the occupation in which the injury occurs, then there is nothing in the statute to prevent a workman from recovering compensation for total disability in any number of other occupations also in which he may subsequently engage and become injured. For example, if plaintiff were to be allowed compensation for total disability in this case and should thereafter sustain another accident disabling him from performing the duties of a bartender, the logic of plaintiff's rule, in the absence of any legislative limitation, would compel the allowance of compensation to him for total disability in both occupations.

Under the statute, on the evidence before us, we are obliged to hold that plaintiff's disability, as it now exists, is only partial and not total in character. The compensation to which he is entitled is accordingly governed by the provisions of subdivision 2 of section 48-121, Comp. St. 1929. Subdivision 2 provides: "For disability partial in character (except the particular cases mentioned in subdivision 3 of this section), the compensation shall be sixty-six and two-thirds *per centum* of the difference between the wages received at the time of the injury and the earning power of the employee thereafter \* \* \* paid during the period of such partial disability; not, however, beyond three hundred weeks after the date of the accident causing disability."

Under the rule laid down in *Drum v. Omaha Steel Works,*

129 Neb. 273, 261 N. W. 351, plaintiff's wages, for compensation purposes, must be taken as $9 a week. His wages as a bartender have been $15 a week. The fact that he is earning higher wages than at the time of the accident does not, however, as we have indicated above, necessarily preclude him from recovering compensation. *Epsten v. Hancock-Epsten Co., supra.* The test, under subdivision 2 of section 48-121, *supra,* is whether any element of plaintiff's earning power has been impaired. The term wages is not a complete synonym for earning power. The ability to earn wages in one's employment is, obviously, a primary base in the admeasurement of earning power, but several other component factors are also involved. These include eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work in which engaged. If any one or more of these four elements of earning power are affected and only partially impaired, as the result of an accident arising out of and in the course of employment, and the disability is not one covered by subdivision 3 of section 48-121, Comp. St. 1929, the right to compensation is governed by subdivision 2 of such section. The right in such cases rests, as we have indicated, upon the fact that some preexisting element of earning capacity has been impaired. The extent of the compensation allowed for the impairment, however, depends upon the amount of the wages received at the time of the injury. The statute limits it to 66 2/3 per cent. of the difference between such wages and the earning power of the employee thereafter. Stating it in different terms, the measure of compensation in such a case is 66 2/3 per cent. of the amount of the fraction or percentage of impairment in general earning capacity, applied to the wages received by the workman at the time of the injury, for a period not exceeding 300 weeks from the date of the accident, and in a sum of not more than $15 a week.

In this case, plaintiff should be allowed compensation for total disability at the rate of 66 2/3 per cent. of his weekly wages of $9, or the sum of $6 a week, from February 14,

1933, the date of the accident, to March 1, 1935, when it appears that he was able to obtain employment and to engage in the occupation of a bartender. From March 1, 1935, on, his earning power, from the evidence before us, appears to be impaired 66 2/3 per cent., and he should be allowed compensation for this disability at the rate of 66 2/3 per cent. of 2/3 of $9, or the sum of $4 a week for the period prescribed by statute. Our estimate of disability is not based on the mathematics of any medical witness, but has been arrived at by taking into account all of the factors entering into plaintiff's earning capacity, reflected in the record, such as his age of 33 years, the nature of the work in which he was engaged at the time of the accident, his present occupation, the extent of his physical limitations, etc. Plaintiff is entitled also to the allowances made by the district court for medical and hospital services and for medical supplies, except that the last item should be reduced by the sum of $36 which plaintiff admits here is excessive.

Should plaintiff's injuries cause total permanent disability at some future date, provision for this situation has been made in section 48-142, Comp. St. 1929.

The previous opinion in 135 Neb. 449, 282 N. W. 262, is hereby vacated and the judgment of the district court is reversed and the cause remanded with directions to enter an award in accordance herewith.

REVERSED.

EBERLY, J., dissenting.

I respectfully dissent from the reversal of the judgment of the district court for the following reasons, viz.: That the remuneration actually received by the claimant in his present employment is made without reference to the actual value of the services for which payments are made, and partakes of the nature of a charity; that the application of the rule announced in *Wingate v. Evans Model Laundry,* 123 Neb. 844, 244 N. W. 635, under the facts in this case, is unjustified; that the determination of the actual earning power of claimant, as made by the majority opinion, is wholly unsupported by the facts, and contrary to the man-

date of the controlling statutes; that ·claimant's employ-ment as a bartender, under the particular facts in this case, is not an "established field of employment for which he is fitted," but an employment not only wholly unrecognized and unestablished, but interdicted by the express provisions of statute as well as by public policy.

In support of these contentions, the following is submitted:

Micek, the plaintiff, on February 14, 1933, while in the employment of defendant, in the construction of a bridge near Columbus, Nebraska, and in the course of such employment, moving acetyline tanks thereon, fell through the bridge to the ice below. As a result of this fall he suffered a compound fracture of the first lumbar vertebra and a serious impairment of the nerves leading to the bowels and to the sphincter muscles of the rectum and bladder, causing a partial loss of the functions of those organs. The medical evidence in the record is that there is no question that Micek has a traumatic spinal cord lesion; that the portion of a spinal cord subject to lesion does not regenerate; that the condition will continue and disabilities will increase with passing time; that the effect of the injuries will be to shorten his life and progressively decrease his ability to work; and that a comparison of his ability to perform hard work, which he possessed prior to the accident, with his present physical condition, discloses a 100 per cent. disability.

Micek was a married man, about 33 years of age, with a wife dependent upon him, at the time of the accident in suit. He had lived in Columbus, Nebraska, all his life. This court will take judicial notice of the fact that Columbus is situated on the main line of the Union Pacific Railway at a point from which four branch lines radiate, and is what is commonly referred to as a railroad town. He was, and is, a railway bridge carpenter, a skillful workman, and had been in the employ of the Union Pacific Railway, in that capacity, since 1925. In this employment he rated as a bridge carpenter, with regular compensation fixed at 68

cents an hour. He had been temporarily "laid off" by the Union Pacific, "but was subject to call" when this company needed his services. This lay-off did not interfere with or affect his rights of seniority with the Union Pacific. It may be said in passing that this lay-off took place but two or three weeks prior to his employment by the Omaha Steel works. He was employed by the latter for three days each week for a ten-hour day, with wages of 30 cents an hour, and was so employed at the time of the injury in suit. The result of these injuries received was to deprive plaintiff of his ability to lift objects of weight, to disbar him from following his trade, and prevent his performance of hard work of any kind whatsoever. All gainful occupations for which he had formerly possessed ability, and for which his acquired faculties and native abilities fitted him, and which constituted his natural career, were, after this accident, necessarily denied him.

However, in March, 1935, he secured employment in a "liquor store" at Columbus, Nebraska. This is not a beer tavern. His compensation is fixed by the bill of exceptions at $15 a week. He works 12 hours a day for each weekday, with one hour out for meals. He serves drinks and sells bottled goods. He performs no hard work. As to Sundays, he testifies: "Well, one Sunday we work from 12 o'clock until 6 at night and then the next Sunday I work from 6 until closing time, that is around 11 or 12 o'clock on Sundays." Thus, whether this statement is to be interpreted as six hours Sunday work or as alternately six hours and eighteen hours Sunday work, it becomes a matter of but little importance in any view of the evidence. Sunday work in the sale of alcoholic liquors constitutes an inseparable part of the contract of employment, was contemplated by the parties when the engagement was entered into, and constitutes an essential element of its due performance. It is to be noted that Micek is unable to perform this work without opportunity for resting, and a chair is provided for that purpose, in which his disabilities require him to sit and rest so that he may complete the duties of

each day, which also is not without pain and discomfort. For, without this repeated opportunity of resting, he "couldn't work at all." It is also to be noted that the undisputed evidence of the record is that Micek does not drink intoxicating liquors, and there is no evidence of any previous participation by him in the occupation of bartender he now follows. It is also to be remembered that the Omaha Steel Works is the moving party in this litigation.

Statutory proceedings to determine the compensation were commenced by way of appeal in the district court for Platte county on July 17, 1934, and the final judgment and decree was not entered therein until June 6, 1938. Plaintiff testified in person to the entire transaction involved at length at a session of the court held on September 13, 1934, and the case appears to have been opened up on June 5, 1936, and Micek again testified as to the results of the accident. During the interim other proceedings were had which necessarily challenged the attention of the trial judge to the situation presented; and such judge's personal observation of Micek, of his physical condition, his demeanor when testifying, and the progress of his disabilities, were, in all respects, extended and exceptional. The final decree was entered by the district court on June 6, 1938, in which, after referring to and enumerating the injuries suffered by plaintiff, it is stated, viz.: "As a result of said injuries plaintiff has suffered total and permanent disability within the meaning of the Nebraska workmen's compensation law, and is entitled to compensation therefor as provided in subsection (1) of section 48-121, Compiled Statutes of Nebraska, as amended," and the decree fixes the amount of the weekly payment at the sum of $6 a week.

With reference to the force and effect of this determination, Good, J., in *Maryland Casualty Co. v. Geary*, 123 Neb. 851, 244 N. W. 797, in discussing a similar situation, well observed, viz.:

"Under the statute, workmen's compensation cases are heard in the district court as in equity, and on appeal to this court are to be tried *de novo*. In this class of cases it

has been frequently held that, in reaching findings of fact, we will take into consideration that the trial court saw and observed the demeanor of the witnesses while testifying and was better able to judge of their fairness and credibility than is this court from the record. *Shafer v. Beatrice State Bank,* 99 Neb. 317; *Enterprise Planing Mill Co. v. Methodist Episcopal Church,* 100 Neb. 29; *State v. Leflang,* 108 Neb. 138; *Southern Surety Co. v. Parmely,* 121 Neb. 146. This rule has peculiar force and applicability in the instant case. The trial court saw and observed the physical condition of defendant (Geary), the character and extent of his injuries, as he appeared in court. * * * It clearly appears that the trial court was in a vastly better position, than is this court, to determine the weight to be given to the testimony of the medical witnesses, and to ascertain the true condition of defendant's (Geary's) injuries."

See, also, *Great Western Sugar Co. v. Hewitt,* 127 Neb. 790, 257 N. W. 61.

It is obvious that the supporters of the majority opinion, who have not seen and do not know the physical condition of this claimant, have accorded no weight whatever to the opinion and personal observations of the district judge who actually saw and observed the demeanor of this man for a prolonged period of time, and thus possessed personal knowledge thereof.

If, under the circumstances of this case, total inability to perform the work in which claimant was engaged when his injury was received, or any work similar thereto, constitutes total disability, it is obvious that the judgment of the trial court must be sustained. However, the majority opinion contends that the applicable rule is that total disability under subdivision 1 of section 48-121, Comp. St. 1929, of the workmen's compensation law, can only be held to exist where the workman is unable to get, hold, or do any substantial amount of remunerative work, either in his previous occupation or in any other established field of employment for which he is fitted; that under the facts in this case Micek is working in an established field of employ-

ment and the wages so earned and received by him prevent his being claimed as totally disabled and entitle the employer or insurance carrier, upon the basis of the wages so earned and received, to a deduction of the award made by the trial court from $6 to $4 a week. In support of this claim *Wingate v. Evans Model Laundry*, 123 Neb. 844, 244 N. W. 635, and cases based thereon subsequently decided in this jurisdiction are cited. The questions so presented, even if the applicability of the rule be conceded in the instant case, must, however, be considered in the light of the further principle that, it is not sufficient, to entitle an employer to have a reduction in the weekly compensation ordered by the court, that it appear that the workman has the physical capacity to do some kind of work different from the general work he was engaged in at the time of the accident; but it must be shown that the workman, either by his own efforts or that of his employer, can actually get such work in an established and lawful field of employment and the burden of so showing (the technical burden of proof) is on the employer. *Lupoli v. Atlantic Tubing Co.*, 43 R. I. 299, 111 Atl. 766. See, also, *Cardiff Corporation v. Hall* (1911) 1 K.B. 1009; *Ball v. Coulthard & Co., Ltd.*, 12 B.W.C.C.312; *Hood v. Wyandotte Oil & Fat Co.*, 272 Mich. 190, 261 N. W. 295; *Sullivan's Case*, 218 Mass. 141, 105 N. E. 463.

It may be conceded that the occupation of a bartender, properly followed, may be considered as an established field of lawful employment. But the occupation involves experience, skill, and professional technique in the preparation, concoction and service of alcoholic liquors. In the instant case the affirmative evidence is ample that Micek did not possess the physical power necessary to discharge the duties incident to this established field of employment. There is no evidence that at the time of his first employment he had had any previous experience in the line of work he was entering upon or had any skill in the discharge of the new duties. Every fact in the record is consistent with the view that this employment had no relation to his then earning power, and that in fact it was wholly charitable,

or as a result of a feeling of sympathy in a community in which he had spent his entire life and which largely engaged in the same kindred occupation of railroading. What a workman receives as an actual charity or without reference to the real value of the services performed may not operate to the benefit of an insurance carrier. The controlling features of the evidence bring it within the principle of the case wherein we held that, where a man, the victim of an industrial accident, though confined to his bed and continuously suffering from pain, was enabled to operate a telephone and, thereby aided by the sympathy his situation engendered, maintained a successful magazine agency, his recovery for disabilities suffered should not be reduced by the earnings thus obtained. See, also, *Woods v. Central States Life Ins. Co.*, 132 Neb. 261, 271 N. W. 850; *Bennett v. Metropolitan Life Ins. Co.*, ante, p. 785, 287 N. W. 609; *Wilson v. Brown-McDonald Co.*, 134 Neb. 211, 278 N. W. 254; *Ludwickson v. Central States Electric Co.*, 135 Neb. 371, 281 N. W. 603; *Nebraska National Guard v. Morgan*, 112 Neb. 432, 199 N. W. 557.

In this case it can make no difference as to the form or method by which the $15 a week was turned over to claimant as "wages paid," or whether it evidences a contribution made for the plaintiff's benefit, either directly or indirectly. If such payments were actually made upon or because of charitable motives, if really a gratuity, if the amount thereof was determined without relation to the actual earning power of Micek, or in consideration of matters and elements not involved in the work actually done and performed, such amounts thus paid may not be used as a basis for reduction of the compensation which Micek is otherwise entitled to. *Rio Grande Motor Way v. De Merschman*, 100 Colo. 421, 68 Pac. (2d) 446. This conclusion is quite in conformity with the public policy evidenced by the Nebraska workmen's compensation act. Comp. St. 1929, secs. 48-130, 48-148.

But, even if the payments made be not considered as charities, the majority opinion grievously errs in its appli-

cation of the principles announced in the *Wingate* case to the facts before us in the instant case. It must be conceded that the doctrine as there announced is not to be found in the words of our statute, but is a deduction therefrom, announced by this court in reference to the facts of the case then before it, and which necessarily constitutes a limitation in the application thereof. Indeed, in the *Wingate* case, we notice the citation, with evident approval, of the *Duprey* case in the following language, viz.: "It has been held that, when one might have found some work which he could do sitting down, it will not render his disability partial." *Duprey's Case,* 219 Mass. 189, 106 N. E. 686. Duprey was a carpenter, and the necessary use of a chair by the claimant in the instant case is indeed suggestive. But it would seem that the facts in the instant case differentiate it from the *Wingate* case and render the rule there announced wholly inapplicable.

The controlling legislative intent clearly expressed in the enactment of the workmen's compensation law of Nebraska is: "When personal injury is caused to an employee by accident arising out of and in the course of his employment, of which the actual or lawfully imputed negligence of the employer is the natural and proximate cause, he shall receive compensation therefor from his employer." Comp. St. 1929, sec. 48-101. And where the parties in interest have by agreement, express or implied, or otherwise, accepted the provisions of Part II of the Nebraska workmen's compensation act, compensation for such personal injuries shall be determined in the manner and pursuant to the formula in such Part II prescribed, ever keeping in view the ultimate end to be achieved.

This word "compensation" we find repeatedly employed throughout this enactment in connection with every injury sought to be redressed thereby. "Compensation," as defined by the lexicographers, includes, "that which constitutes, or is regarded as, an equivalent or recompense; * * * that which compensates for loss or privation; amends, remuneration; recompense." Webster's New International Dictionary (2d Ed.).

A more technical definition, equally of universal acceptance, is: "An act which a court orders to be done, or money which a court orders to be paid, by a person whose acts or omissions have caused loss or injury to another, in order that thereby the person damnified may receive equal value for his loss, or be made whole in respect of his injury." 12 C. J. 229.

"Compensation," as thus defined, is the purpose of this law that the workman shall receive, and it shall be determined within the limitations of the actual injury suffered.

This court is committed to the doctrine that the workmen's compensation act "is one of general interest, not only to the workman and his employer, but as well to the state, and it should be so construed that technical refinements of interpretation will not be permitted to defeat it." *Baade v. Omaha Flour Mills Co.*, 118 Neb. 445, 225 N. W. 117. See, also, *Parson v. Murphy*, 101 Neb. 542, 163 N. W. 847; *McGuire v. Phelan-Shirley Co.*, 111 Neb. 609, 197 N. W. 615; *Speas v. Boone County*, 119 Neb. 58, 227 N. W. 87; *Wilson v. Brown-McDonald Co.*, 134 Neb. 211, 278 N. W. 254.

The majority opinion is based entirely upon the following statutory language which they seek to apply to the facts of the present controversy, in the light of the alleged controlling *"Wingate* rule," viz.: "The following schedule of compensation is hereby established for injuries resulting in disability: * * * (2) For disability partial in character * * * the compensation shall be sixty-six and two-thirds *per centum* of the difference between the wages received at the time of the injury and the earning power of the employee thereafter." Comp. St. 1929, sec. 48-121.

This language must be construed with all other provisions of this statute to accomplish its expressed purpose, viz., that the injured may receive as "compensation" equal value for his loss or made whole with respect to his injury. To determine the actual loss of earning power necessitates the establishment of the actual earning power existing prior to the accident. You cannot determine a loss until you know what is lost. In the present case the earning power

of Micek prior to the accident, as indisputably established, was 68 cents an hour in his permanent employment, only temporarily suspended, with additional consideration given to hours of employment, time and a half where extended hours of labor were required, and relative ability to get and hold substantial amounts of remunerative work, in view of his admitted priorities. He is now totally disabled from performing the work he had prior to receiving his injury. This conclusion is equally true as to his temporary vocation in which he was employed when the disabling accident occurred, as well as to all occupations of a similar kind and character. As to employment in a new or different occupation, not only must the relative ability of the employee to get and hold substantial amounts of remunerative work therein be considered, but age, education, training, general physical and mental capacity and adaptability may, and often should, be taken into consideration in arriving at a just conclusion as to the percentage of impairment of the earning capacity. Here the burden of proof must be carried by the Omaha Steel Works. It is obvious that no attention is given by the majority opinion to the real earning power of Micek, as existing prior to the accident or subsequent thereto. All these necessary elements in the situation have been wholly ignored in the majority opinion, and it proceeds wholly on the basis of an obviously improper application of the rule in the *"Wingate* case," which results in a denial to Micek of compensation, the equivalent "value for his loss." This result conceded, the conclusion is established that the application of the *Wingate* rule, under the facts in the instant case, was in violation of the clear intent of the workmen's compensation act, and is erroneous. On the other hand, only by the principles announced in the first opinion is Micek given what the law contemplates that he should have—actual compensation within the limitations of the act for loss of earning power actually suffered. This case arises out of the economic depression which exists. Under these circumstances, men of outstanding ability in their respective lines of work accept temporary employ-

ment as common laborers. But they do not lose "earning power" in so doing. While the maximum amount of compensation to be paid is limited by the remuneration actually received when injured, their "earning power" is a fact to be determined by all elements and circumstances of the situation, and is not limited to or by the wages then received. In fact, wages received are not conclusive as to earning power. A case quite similar in its main features was presented to the supreme court of Colorado in *Globe Indemnity Co. v. Industrial Commission,* 67 Colo. 526, 186 Pac. 522. The question before the court, under the facts in that case, was the proper applicability of Rule (1) which substantially includes the elements embraced in our *Wingate* case, for which one party contended, and of Rule (2) which, in part, includes the elements considered in the original opinion in this instant case, and which was relied upon by the claimant. The Colorado court, in its discussion of this question, says:

"Both of these contentions may be wrong, as a simple illustration will demonstrate.

"An expert engraver, past middle life, engaged for years in that business, commanding high wages thereat, and having no other special skill, and no other regular occupation, is temporarily employed at very low wages carrying brick and mortar in a wheelbarrow in building construction. While so employed he sustains an injury to his right hand, trivial in its effect to incapacitate him from general work, but making it wholly impossible for him ever again to secure employment as an engraver. Both the language and spirit of the act would be violated in his case by the application of Rule No. 1.

"The same man, under the same circumstances, engaged in the same occupation, sustains an injury to his foot of such a character as to permanently incapacitate him from running a wheelbarrow, but having no effect whatever upon his earning capacity as an engraver. Both the language and spirit of the act would be violated in his case by the application of Rule No. 2.

"We are of the opinion that the widest possible discretion is vested in the commission to determine whether, under a given set of circumstances and a particular state of the evidence, the first or second rule, or a combination of both, should be applied. Age, education, training, general physical and mental capacity, and adaptability, may, and often should, be taken into consideration in arriving at a just conclusion as to the percentage of impairment of earning capacity."

Two conclusions are supported by the foregoing, viz.: (1) That the application of the *Wingate* rule is erroneous, and (2) that the amount of the allowance made is wholly insufficient because of the obvious omission to consider all the elements of the damage to, and loss of, the earning power of Micek.

It is obvious that to secure for Micek appropriate relief, his original earning power as it existed prior to the accident must be considered in order that earning power thereafter existing may be determined. If diminished, by what per cent. determines the actual loss to him as the result of the accident. This is not accomplished by the application of Rule (1). It is accomplished by the application of Rule (2), because only in that way may the claimant receive compensation for the loss of actual earning power within the limitations of our compensation act.

But, even if the rule announced in the *Wingate* case is applicable and controlling, the court erred in directing a reduction of the compensation allowed because of the alleged receipt by the claimant, Micek, of $15 a week. The only proof offered by the moving party was the performance of certain work which included services by Micek as a bartender on the Sabbath Day in the sale of alcoholic liquors. The record does not disclose the value of the services performed, save and except that $15 a week was actually paid and received. In this connection, it will be remembered that mere proof of wages received from time to time is not conclusive on the question of earning power. *Krock v. Ballard Sprague & Co.*, 104 Pa. Super. Ct. 389, 159 Atl. 191; *Keifer v. Phila-*

*delphia & Reading Coal & Iron Co.*, 102 Pa. Super. Ct. 235, 156 Atl. 722; *Burbage v. Lee*, 87 N. J. Law, 36, 93 Atl. 859.

The evidence discloses that the performance of Sunday labor in a liquor store was contemplated by the parties to the contract, was an inseparable part thereof, was duly performed by Micek, and was an inseparable part of his employment. There is no proof that employment as a bartender was open to him save with the requirement that Sunday labor should be performed. It was not a work of necessity. On the contrary, the sale of alcoholic liquors at retail on the first day of the week, called Sunday, is expressly forbidden. Comp. St. Supp. 1937, sec. 53-337.

Now, a liquor store or liquor shop is a place where spirituous liquors are sold. 37 C. J. 1266.

Not only is the burden imposed on the employer of showing that the injured workman can get a job, but this job must involve and be limited to legal labor lawfully performed. Public policy and the dignity of labor alike will not, under the terms of the workmen's compensation act, permit or condemn labor to resort to crime to secure sustenance when overtaken by accident or misfortune arising out of and in the course of his employment in his master's service.

Now Sunday employment is prohibited by the law of this state. Comp. St. 1929, sec. 28-938. See, also, *State v. Somberg,* 113 Neb. 761, 204 N. W. 788. And, as we have already seen, the sale of alcoholic or spirituous liquors at retail on the Sabbath Day is expressly inhibited by section 53-337, Comp. St. Supp. 1937. See, also, sections 53-375, 53-376, Comp. St. Supp. 1937.

In the instant case the services involving sales by retail of alcoholic liquors, it is evident, are essential to Micek's contract of employment and he is thus required to perform them. There is no evidence that his present employment would continue if the Sunday work were not performed. Also, there is no evidence that Micek could obtain any other employment than this he now has, nor is there any evidence as to the actual value of lawful services actually

performed. His present employment may therefore not be said to be within the limitation of legal labor lawfully employed within an established field of employment. It must be remembered that what this court permits in this case will, by implication, be required of the injured workman in future cases. The employer, therefore, has not carried the burden essential to secure a reduction of the weekly compensation from the basis of permanent total disability to partial disability.

For the reasons set forth, the majority opinion is challenged as erroneous, both as to fact and as to law.

PAINE and MESSMORE, JJ., concur in this dissent.