HERMAN C. FREDERICK, APPELLANT AND CROSS-APPELLEE, V. CARGILL, INC., APPELLEE AND CROSS-APPELLANT.

86 N. W. 2d 575

Filed December 13, 1957. No. 34236.

*Thomas A. Walsh* and *A. Lee Bloomingdale,* for appellant.

*Cassem, Tierney, Adams, Kennedy & Henatsch,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is a workmen's compensation case. Plaintiff's petition was heard before one judge of the compensation court and resulted in a dismissal. Plaintiff appealed to the district court where trial de novo was had. Compensation was granted from July 9, 1954, to November 15, 1954, "for temporary and permanent disability." Compensation for permanent partial disability of the body as a whole was denied. Hospital and medical expenses were granted.

Plaintiff appeals here assigning error in the denial of compensation for permanent partial disability following the period of temporary total disability.

Defendant cross-appeals and in doing so fails almost entirely to comply with Rule 8 b4 as required by Rule 1 d of the rules of this court. However, plaintiff has not challenged the sufficiency of defendant's brief in that regard. We do not approve the procedure here followed; nevertheless, it not being questioned, we consider the ground of the cross-appeal which is that the trial court erred in allowing any compensation because plaintiff's "illness was not due to injury."

We affirm the judgment of the trial court.

The cause is here for trial de novo on the record as to those issues of fact involved in the findings of fact about which complaint is made.

We take up first the question presented by the cross-appeal, for, if correct, it is determinative of this litigation. We state the evidence as we conclude the facts to be, pointing out such contradictions as we deem require mention.

Plaintiff was an employee of defendant as a janitor and had been so employed for 8 years. On July 2, 1954, he was sweeping in a room where a metal duct came down on an angle toward the floor. This duct had a protruding edge or flange. Plaintiff struck the left side of his back over the chest cavity against this flange. He suffered pain and shortness of breath. He fell to the floor. The accident occurred near quitting time. Plaintiff went home shortly thereafter.

There is evidence that plaintiff early related the point of impact to the front of his chest rather than the back. However, that discrepancy was explained largely by the difference in meaning of the word chest. In any event in trial de novo we find according to plaintiff's testimony, as did the trial court.

July 3 and 4, 1954, were Saturday and Sunday. July 5 was a holiday. During these days plaintiff remained

at home. He testified as to the pain in the chest. He returned to his work on July 6 and 7, although having increasing pain. On July 8 he was unable to work because of the pain. He reported to his foreman both about the accident and his condition. Plaintiff testified that he also reported the accident to his foreman on July 2. His petition before the compensation court alleged that the defendant had notice on July 8. No statutory limitations are involved. The defendant clearly had notice on July 8. Defendant on that day took plaintiff to a medical clinic. Two doctors examined the plaintiff and concluded that he was critically ill. He had a temperature of 102 degrees and was obviously sick. The first doctor found no external evidence of an injury and concluded that trauma was not involved. Both doctors concluded that the plaintiff was either in an advanced stage of tuberculosis or lung cancer, and that he required hospitalization.

On July 9, 1954, he was hospitalized in Council Bluffs, Iowa, under the care of a different doctor. The examining physician that day reported "Clinical findings compatible with lobar pneumonia." On July 10 a thoracentesis was made, and 50 cc. of frank (red) blood were removed. This congealed in the syringe. The doctor performing this tap was careful to make certain that he was not drawing blood from a vein.

Plaintiff in September 1954 came under the care of a lung surgeon. On September 10 he performed a lung tap and removed a total of 350 cc. of pus from two cavities in plaintiff's chest. On September 16, an operation on plaintiff was performed. A portion of the sixth rib was removed, the thorax opened, two accumulations of pus removed, and the two empyema cavities were drained. Plaintiff returned to work on November 15.

During the period of hospitalization clinical tests negatived the diagnosis of tuberculosis. The operation finding negatived the diagnosis of lung cancer. At one time defendant took the position that the plaintiff's condition

was due to a hydrothorax and not to a hemothorax. Defendant undertook to discredit the affirmative evidence of blood found on July 10, 1954, in the thoracentesis operation by the testimony of an expert that blood originating from a trauma several days earlier would be dark and congealed blood. Plaintiff's evidence is that a trauma producing a minor rupture would be continuously leaking fresh blood into the cavity where the pus formed. This is sustained by the testimony of increasing pain following the injury and by X-ray pictures showing an enlargement of the empyema cavity.

Defendant here abandons the acute tuberculosis and lung cancer theory, and discusses the hemothorax-hydrothorax contention, but rests its position on the contention that the empyema was caused by pneumonia. That in turn rests on the preliminary finding of the doctor made July 9, 1954. We find no serious attention given to that theory by anyone thereafter. However, plaintiff's physicians explored it and negatived it by use of the X-ray pictures and other findings. There is much discussion in the record of blood counts and other matters which does not affect the decision here.

The long-established rule is: The burden of proof is upon the claimant in a workmen's compensation case to establish by a preponderance of the evidence that personal injury was sustained by him in an accident arising out of and in the course of his employment. Sears v. City of Omaha, 164 Neb. 869, 83 N. W. 2d 857.

Plaintiff's evidence meets the above test. In regular sequence there is shown the accident, increasing pain, blood in the lung cavity, empyema, and the resulting surgery.

Defendant's cross-appeal is not sustained.

The medical and hospital bills were stipulated as reasonable. No contention is advanced as to them here.

We think it obvious that the trial court intended its decree as granting compensation for temporary total disability from July 9, 1954, to November 15, 1954.

The amount of the award, as such, is not challenged here.

We accordingly affirm the award as to medical and hospital expenses and as to the compensation for temporary total disability.

This brings us to plaintiff's appeal. Plaintiff's doctors testified that as a result of the operation he had an adhesion in the lower left lung which would restrict his air intake and affect his vital capacity. He has had a part of one rib removed with the resulting scar. Both doctors say he has a 10% permanent disability of the "body as a whole." The surgeon testified further: "But for all intents and purposes he has normal function, respiration, he is able to carry on as good as the other lung might be, after all they are pairs."

Plaintiff returned to work for the defendant on November 15, 1954. Apparently this was at the same kind of work. There is no indication in the record that he is not able to perform the work although he testified that: "* * * I am weaker and sometimes I am short in breath." At the time of the trial he was receiving higher wages than at the time of the accident.

The above medical evidence is undisputed. Plaintiff argues that since it is in a specialized branch of medical science and is not intrinsically unreasonable, it must be accepted as true.

Assuming the fact of disability testified to by the plaintiff's witnesses, it does not follow necessarily that plaintiff is entitled to receive compensation. Section 48-121, R. S. Supp., 1953, was in force when this accident occurred. As amended in other items, it is now section 48-121, R. S. Supp., 1955. Except as to the scheduled disabilities set out in subdivision (3) the act provides that: "For disability partial in character, * * * the compensation shall be sixty-six and two-thirds per cent of the difference between the wages received at the time of the injury and the earning power of the employee thereafter, * * *" with a maximum limit.

In Anderson v. Cowger, 158 Neb. 772, 65 N. W. 2d

51, we defined earning power as follows: "Earning power," as used in subdivision (2), section 48-121, R. R. S. 1943, is not synonymous with wages, but includes eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work, as well as the ability of the workman to earn wages in the employment in which he is engaged or for which he is fitted.

In the course of the opinion we repeated our holding that if, after injury, an employee receives the same or higher wages than before injury, it is indicative, although not conclusive, of the fact that his earning power has not been impaired.

We find nothing in this record upon which to base any reasonable calculation of an impaired earning power. Plaintiff has not shown an industrial disability.

The assignment of error of the plaintiff's appeal is accordingly denied.

As construed here the judgment of the trial court is affirmed.

AFFIRMED.