Marvin E. Sidel, Sr., appellee, v. Travelers
Insurance Co. et al., appellants.

288 N. W. 2d 482

Filed February 12, 1980.   No. 42753.

T. J. Stouffer of Cassem, Tierney, Adams, Gotch &
Douglas, for appellants.

Hal Bauer of Bauer, Galter, Geier, Flowers &
Thomson, for appellee.

Heard before Krivosha, C. J., Boslaugh, McCown,
Clinton, Brodkey, White, and Hastings, JJ.

Clinton, J.

Defendant, Spencer Foods, Inc., and its work-
men's compensation insurance carrier, Travelers
Insurance Co., appeal from an award of the Ne-
braska Workmen's Compensation Court to employee,

Marvin E. Sidel, Sr., for injuries suffered on April 4, 1977. The defendants assign and argue that the Workmen's Compensation Court erred in the following respects: (1) No competent evidence supports the lower court's finding that the injury, arising out of and in the course of employment, resulted in a 20 percent permanent partial disability; that this figure reflects the cumulative effect of employment-related and nonemployment-related injuries. (2) In holding the claimant is entitled to rehabilitative services under the provisions of section 48-162.01 (3), R. S. Supp., 1978. (3) In allowing an award of attorney's fees for the service of the plaintiff's attorney on rehearing before the three-judge Workmen's Compensation Court. We affirm.

A recital of the evidence, including medical, and a description of the two awards in the Workmen's Compensation Court are necessary for a proper perspective of this case. Plaintiff, who at the time of trial was 41 years of age, began work for Spencer Foods on September 7, 1976, as a janitor on the killing floor of its packing plant. His work involved picking up scraps and discard and washing the floor and keeping it clean. On April 4, 1977, while dumping a tub of udders into an auger, he suffered a back injury. As a consequence, he had a lumbar laminectomy performed on April 14, 1977. This is the injury for which the single workmen's compensation judge, on December 26, 1978, made an award for a 10 percent reduction in earning capacity under the provisions of section 48-121 (2), R. R. S. 1943. The three-judge court on April 16, 1979, raised this to a 20 percent reduction in earning capacity due to this injury.

Plaintiff had returned to work on June 13, 1977. On or about March 6, 1978, he underwent a cervical fusion for an old neck problem which it was admitted antedated the injury of April 4, 1977, and was unrelated to his employment. Following that sur-

gery he returned to work on June 5, 1978, doing the same job as before, although he testified that he could not lift as much and was doing somewhat easier work.

On July 11, 1978, while at his place of employment and during a coffee break, plaintiff suffered a severe low back pain while arising from a sitting position. This incident was reported to the employer that same evening. Plaintiff came back to work the following day and continued working until he went on vacation about August 21, 1978. The incident of July 11, 1978, was included in his claim before the Workmen's Compensation Court. The single judge found that the July 1978 incident was a recurrence of the April 1977 injury. The medical report with reference thereto recited: ". . . it would be difficult to establish whether this is a recurrence of the old disc problem or another disc at a different level." The three-judge court found that plaintiff had not sustained his burden of proof as to the July 11, 1978, alleged injury.

On August 28, 1978, plaintiff was unable to get out of bed. He was absent from his employment thereafter. His employer stated the medical reports were unacceptable as an excuse for his absence. Although plaintiff was fired on September 8, 1978, there is evidence that he was later reinstated pursuant to a grievance procedure.

Most of the difficulties in this case are related to the medical evidence which consists of reports of the treating surgeon. Following the lumbar laminectomy, the surgeon reported: "The above is released to return to work May 23, 1977. He should avoid heavy weight lifting and prolonged bending. He may return to full duty on June 13, 1977." On May 31, 1978, following the cervical fusion, the surgeon reported: "The above is released to return to work June 5, 1978." On September 7, 1978, the surgeon elaborated: "This patient had a lumbar laminec-

tomy and a cervical fusion due to disc degeneration and has been seen recently for a back ache again. There was a possibility of recurrence of lumbar disc herniation. In view of back problem and cervical fusion, I believe he should not do a job which involves heavy lifting, stooping, twisting. I therefore believe he may change his present job and elect to do a job which does not strain his neck and back repeatedly. Regarding permanent impairment, 10 percent permanent impairment following lumbar laminectomy which he had in April of 1977 should be allowed for lumbar spine.''

On September 14, 1978, a further report was received. It recited that the doctor had seen plaintiff on August 18, 1978, for a complaint of back pain. It further recited that plaintiff had called on August 28, 1978, and stated that the pain was not better. The report then recited that the pain had started about 5 weeks earlier (we note this roughly coincides with the July 11, 1978, incident) and it flared up again on August 28, 1978. The report concluded, referring to an office visit on August 31, 1978: ''As stated earlier, he has about 10 percent of permanent impairment in loss of physical function due to his lower back problem. However, he had a cervical fusion also which involves further 10 to 15 percent of permanent impairment. The total impairment would amount to about 20 to 25 percent permanent impairment in loss of physical function of the body.'' A report on October 12, 1978, contains the recital which we earlier mentioned, to wit, ''. . . it would be difficult to establish whether this is a recurrence of the old disc problem or another disc at a different level.'' On October 30, 1978, the surgeon recommended that plaintiff ''be employed in a job which does not require heavy lifting, stooping or twisting of his back which could be in the present company, if such a job is available.''

The evidence shows that plaintiff is a high school

graduate. Most of his employment history has been doing manual labor similar to that while employed with Spencer Foods. However, he has also done some work as a mechanic in garages, although not specifically trained in that area. He testified that after the lumbar laminectomy his ability to lift was reduced and he was given lighter work. At the time of trial, he had elected vocational rehabilitation pursuant to the option contained in the order of the Workmen's Compensation Court.

The awards of the single judge and of the three-judge courts each contained the following provision: "There is a reasonable probability that with appropriate training, rehabilitation or education, the plaintiff may be rehabilitated to the extent that he can significantly increase his earning capacity; if the plaintiff desires to be evaluated as to his suitability for rehabilitation services, including job placement, he should contact the Rehabilitation Specialist of the Nebraska Workmen's Compensation Court . . . ."

With reference to the first assignment, the defendants state their contention as follows: "The Appellants respectfully submit that the court's ultimate finding with respect to extent of disability renders [the] appearance of compliance with controlling precedent illusory. It is the Appellants' contention the court's finding of a 20 percent loss of earning power undermines the credibility of its declaration of intent to restrict the scope of its considerations: this figure could only be arrived at if the cumulative effect of all three injuries are thrown into the balance."

Awards under the provisions of section 48-121 (2), R. R. S. 1943, are not measured by loss of bodily function, but by reduction in earning power or employability. Pavel v. Hughes Brothers, Inc., 167 Neb. 727, 94 N. W. 2d 492; Miller v. Peterson, 165 Neb. 344, 85 N. W. 2d 700; Thinnes v. Kearney Pack-

ing Co., 173 Neb. 123, 112 N. W. 2d 732. We have also said: " 'Earning power,' as used in subdivision (2), section 48-121, R. S. Supp., 1955, is not synonymous with wages, but includes eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work, as well as the ability of the workman to earn wages in the employment in which he is engaged or for which he is fitted. . . . If, after injury, an employee receives the same or higher wages than before injury, it is indicative, although not conclusive, of the fact that his earning power has not been impaired." Frederick v. Cargill, Inc., 165 Neb. 589, 86 N. W. 2d 575. See, also, Micek v. Omaha Steel Works, 136 Neb. 843, 287 N. W. 645.

As is clear from an examination of the above opinions, a workman may have a loss of bodily function without impairment of earning capacity. He may, on the other hand, be earning a greater wage after the injury than before, but because of the loss of bodily function, his earning capacity may be impaired and thus he would be entitled to compensation under section 48-121 (2), R. R. S. 1943. In Micek v. Omaha Steel Works, *supra*, we said: "The test, under subdivision 2 of section 48-121, *supra,* is whether any element of plaintiff's earning power has been impaired. The term wages is not a complete synonym for earning power. The ability to earn wages in one's employment is, obviously, a primary base in the admeasurement of earning power, but several other component factors are also involved. These include eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work in which engaged. If any one or more of these four elements of earning power are affected and only partially impaired, as the result of an accident arising out of and in the course of employment, and the disability is not one covered by subdivision 3 of section 48-121, Comp. St. 1929, the

right to compensation is governed by subdivision 2 of such section. The right in such cases rests, as we have indicated, upon the fact that some preexisting element of earning capacity has been impaired."

The result necessarily depends upon the facts in the particular case. In Frederick v. Cargill, Inc., *supra,* there was a loss of bodily function without loss of earning power. In Micek v. Omaha Steel Works, *supra,* there was a loss of earning power despite the fact that the employee was making greater wages in a different occupation after the injury.

In this case, the Workmen's Compensation Court was entitled to take into consideration not only the 10 percent loss of bodily function because of the lumbar laminectomy, but also the facts that the plaintiff was engaged in common labor and that that was his primary skill. His ability to lift was impaired and his employability was thus reduced.

The court specifically found that the injury of July 11, 1978, was not compensable. We have no reason to believe the court considered that or the noncompensable cervical impairment in any way in its determination. The findings of fact made by the Nebraska Workmen's Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case. § 48-185, R. R. S. 1943.

The defendants contend that the provision for vocational rehabilitation in the order of the Workmen's Compensation Court was unauthorized by law, and point to the provisions of section 48-162.01 (3), R. R. S. 1943, as follows: "An employee who has suffered an injury covered by sections 48-101 to 48-151 shall be entitled to prompt medical and physical rehabilitation services. *When as a result of the injury he is unable to perform work for which he has previous training or experience,* he shall be entitled to such vocational rehabilitation services, including retraining and job placement, as may be reasonably necessary to restore him to suitable employment . . . ."

(Emphasis supplied.)

The defendants argue that the order for rehabilitation training so "that he can significantly increase his earning capacity" is not included within the provisions of the cited statute, for, by its terms, it applies only where the employee, as a result of the injury, is unable to perform work for which he has previous training or experience. The defendants, however, have overlooked the provisions of section 48-162.01 (6), R. R. S. 1943, which states: "Whenever the court or judge thereof determines that there is a reasonable probability that with appropriate training, rehabilitation, or education a person who is entitled to compensation for . . . partial disability which is or is likely to be permanent may be rehabilitated to the extent that . . . he can . . . increase his earning capacity and that it is for the best interests of such person to undertake such training, rehabilitation, or education, if the injured employee without reasonable cause refuses to undertake the rehabilitation, training, or educational program determined by the court or judge thereof to be suitable for him or refuses to be evaluated under the provisions of subsection (3) of this section, the court or judge thereof may suspend, reduce, or limit the compensation otherwise payable under sections 48-101 to 48-151."

Although it is to be observed that what the literal language of subsection (6) of section 48-162.01, R. R. S. 1943, authorizes is the suspension, reduction, or limitation of compensation if the employee refuses rehabilitation without reasonable cause, or refuses to be evaluated under subsection (3), it is the plain implication of subsection (6) that the court may require the employee to undertake rehabilitation training in order to increase earning capacity. It would be anomalous to say that the Legislature intended to authorize suspension or reduction of benefits because the employee refuses to take advantage of

training which the court was not authorized by statute to offer or order. Therefore, subsections (3) and (6) together must mean that the statute authorizes vocational rehabilitation training not only under the circumstances outlined in subsection (3), but also where the Workmen's Compensation Court finds that the employee has suffered a reduction in earning power on account of a compensable injury and also finds that vocational rehabilitation will increase that earning capacity. We now expressly so hold. See Camp v. Blount Bros. Corp., 195 Neb. 459, 238 N. W. 2d 634.

The contention that the plaintiff was not entitled to an attorney's fee under the provisions of section 48-125, R. R. S. 1943, because on rehearing the injury of July 11, 1978, was found to be noncompensable and medical expense in connection therewith was disallowed, is not meritorious. The plaintiff did receive a net increase in compensation on rehearing.

The plaintiff is awarded the sum of $750 for the services of his attorney in this court.

AFFIRMED.