RAYMOND L. MULDER, APPELLANT AND CROSS-APPELLEE, V.
MINNESOTA MINING & MANUFACTURING COMPANY, DOING
BUSINESS AS 3M COMPANY, APPELLEE AND CROSS-APPELLANT.
361 N.W.2d 572

Filed February 8, 1985.   No. 84-201.

Robert F. Martin, for appellant.

Tim J. Kielty, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE,
SHANAHAN, and GRANT, JJ.

PER CURIAM.
This is an appeal in a proceeding under the Workmen's

Compensation Act.

The plaintiff, Raymond L. Mulder, was injured on May 12, 1982, while employed by the defendant, Minnesota Mining & Manufacturing Company, as a "general helper." The injury occurred when the plaintiff was struck in the low back by a metal brace that fell from a rack. The plaintiff twisted his back in an attempt to avoid the falling metal brace.

After the hearing before a single judge of the compensation court, the plaintiff recovered an award for medical expenses and temporary total disability from September 1, 1982, to the date of the hearing, February 17, 1983, and thereafter so long as he remained totally disabled.

On rehearing, the plaintiff recovered an award for temporary total disability from September 1, 1982, through March 1, 1983, and for 50 percent permanent partial disability for 274 weeks thereafter. The award also included medical expenses, attorney fees, witness fees, and deposition expense.

The plaintiff has appealed and contends that the compensation court erred in failing to award the plaintiff compensation for permanent total disability, a penalty for waiting time, and witness fees for expert witnesses in accordance with their charges as expert witnesses. The defendant has cross-appealed and contends that the compensation court erred in awarding the plaintiff compensation for any disability after September 1, 1982, including medical expenses, attorney fees, witness fees, and deposition expenses.

The facts are not in dispute that a metal brace fell and struck the plaintiff while he was employed by the defendant. However, there is a sharp conflict in the testimony of the medical witnesses as to the effect of the accident and its relation to the plaintiff's disability.

On the day that the accident occurred, the plaintiff saw his family physician, Dr. William Eaton, who diagnosed the injury as a "superficial laceration of the lower left back, a bruised back," and sutured the wound. Subsequently, under Dr. Eaton's supervision, x rays were taken of the plaintiff's back, which showed degenerative disease but no "boney trauma." Dr. Eaton further testified, by way of deposition, that he

considered this to be a "relatively negative X-ray" and that the plaintiff made no complaints other than "[t]he times that he was in his back symptom was discomfort around the area that was traumatized, the abrasion and the laceration and the general bruising in this area." Dr. Eaton last saw the plaintiff on June 29, 1982, at which time the plaintiff related that he had seen a chiropractor to fix his back; the appointment on the 29th, however, was not related to the back injury.

The plaintiff testified that he did not notice any particular pain in his back other than the laceration until the sutures were removed. Following their removal, he noticed his right leg was numb. According to the plaintiff, Dr. Eaton examined him in light of this complaint, but found nothing. In early June the plaintiff began seeing a chiropractor, who restricted plaintiff's lifting capacity at work.

Following a conversation with, and upon the recommendation of, one of his employment supervisors, the plaintiff consulted Dr. Edward Simodynes, an orthopedic surgeon, on August 5, 1982. At that time the plaintiff had pain in his lower back and right leg; he could not sit for more than 10 minutes; he was having problems lifting; and he was limping.

Dr. Simodynes testified, by deposition, that the plaintiff complained of pain in his back that extended into his right hip and thigh and that his right hip tended to fall asleep. According to Dr. Simodynes, his symptoms suggested possible nerve root impingement by a disk lesion. Dr. Simodynes was unable to proportion what percentage of the condition was attributable to the work injury as compared to any preexisting back condition. On cross-examination Dr. Simodynes testified that if the possibility of a disk lesion did not surface, then he would conclude that plaintiff suffered from a chronic lumbosacral strain or a degenerative back condition. His diagnosis was "not a certainty," but Dr. Simodynes did express the opinion: "According to my evaluation at that time, I thought he should return to work, attempt work under the conditions specified. I felt that in all probability, he could perform some restricted labor."

On September 1, 1982, the plaintiff began seeing another orthopedic surgeon, Dr. John Brantigan.

On September 3, 1982, the plaintiff's employment was terminated because of the plaintiff's violation of the defendant's attendance rules and absences from work without notice.

Dr. Brantigan testified by deposition that the plaintiff complained of pain in his back, radiating down his right leg, and a "catching" in his right leg. Prior to testifying, Dr. Brantigan had last examined the plaintiff on July 8, 1983. Dr. Brantigan testified that the plaintiff was completely disabled. "That was based," he said, "on a clinical general assessment that it was inconceivable to me that in his general condition at that time, that he would have been able to work. That would have included a combination of orthopedic disability and psychiatric disability." It was his opinion that the injury was caused by the accident at work; and after performing two myelograms and two CAT scans, he diagnosed that plaintiff suffered from a chronic lumbosacral strain. On cross-examination he testified that according to the manual published by the American Academy of Orthopedic Surgeons, provided for reference by orthopedic surgeons in evaluating permanent physical impairment, plaintiff had a 5- to 10-percent impairment rating in relation to his chronic back strain.

Upon Dr. Brantigan's referral, the plaintiff began seeing a psychiatrist, Dr. Bruce Gutnik, on February 7, 1983. The plaintiff complained to Dr. Gutnik that since his injury at work and subsequent unemployment, he had developed a fairly severe depression. Dr. Gutnik diagnosed the plaintiff as having a depressive neurosis with anxiety, and prescribed medication and therapy. He testified that the cause of the plaintiff's condition was the injury at work and the financial problems the plaintiff had and his fear of the workmen's compensation hearings. Dr. Gutnik testified: "I don't believe he could work"; and offered a guarded prognosis:

> I think without treatment he is not going to get better. I think with treatment we can at least reduce some of the symptoms so he is not as miserable as he has been. Whether or not he will get to the point that he doesn't need continuing medication and treatment or not, I don't

know.

Dr. Michael O'Neal, an orthopedic surgeon, "at the request of the Disability Board of the State of Nebraska," examined the plaintiff. Dr. O'Neal testified that plaintiff's problems were compatible with a herniated or ruptured disk. Based on his examination, Dr. O'Neal thought the plaintiff had a 25-percent permanent partial disability of the body as a whole.

The plaintiff was further examined by Dr. John Engler, a psychologist. He testified that he considered the plaintiff capable of doing work in the light range of exertion—lifting. He further testified that the plaintiff's psychological condition did not indicate that he was unable to work in some capacity. In his opinion the plaintiff's condition was part of an ongoing history and not necessarily caused by the work injury.

Lastly, Dr. Patrick Bowman, an orthopedic surgeon, testified that the plaintiff suffered from a chronic lumbar strain and that a reasonable relationship could be established between the accident and his symptoms. It was Dr. Bowman's opinion that the plaintiff's injury was "not typically consistent with total impairment" and that his condition generally carried an impairment rating of less than 10 percent.

Neb. Rev. Stat. § 48-185 (Reissue 1984) provides in relevant part:

> The findings of fact made by the Nebraska Workmen's Compensation Court after rehearing shall have the same force and effect as a jury verdict in a civil case. A judgment, order, or award of the Nebraska Workmen's Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the court acted without or in excess of its powers, (2) the judgment, order, or award was procured by fraud, (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award, or (4) the findings of fact by the court do not support the order or award.

In light of these limitations we review the findings of the Workmen's Compensation Court. *Tranmer v. Mass Merchandisers*, 218 Neb. 151, 352 N.W.2d 610 (1984).

The first issue is whether the plaintiff's disability arose out of or in the course of his employment by the defendant. The

defendant contends that "[t]here is no competent evidence in the record of any objective nature to support the finding that plaintiff suffered an injury other than a laceration to his back on May 12, 1982 . . . ." Brief for Appellee at 7. The defendant argues that any further injury is attributable to the plaintiff's prior degenerative back condition or his own overexertion.

The burden of proof was upon the plaintiff to establish by a preponderance of the evidence that his disability was caused by an injury arising out of and in the course of his employment. *Doty v. Aetna Life & Casualty*, 217 Neb. 428, 350 N.W.2d 7 (1984). The compensation court acknowledged the conflict between the medical witnesses and concluded that the plaintiff's back condition and mental depression were either caused or aggravated by the accident. A review of the record reveals substantial evidence to support those findings.

The next issue which must be considered is the degree of disability found by the compensation court. This court does not reweigh the facts. *Person v. Red Lion Inn*, 217 Neb. 745, 350 N.W.2d 570 (1984). Indeed, this court has said often: " ' "Where the record in a case reflects nothing more than a resolution of conflicting medical testimony, there appears no purpose in this court substituting its judgment of facts for the judgment of the compensation court." ' " *Paris v. J. A. Baldwin Mfg. Co.*, 216 Neb. 151, 158, 342 N.W.2d 198, 202 (1984).

Part of the difficulty in determining the extent of disability under the facts of this case stems from the dual nature of the plaintiff's injury: he has both a back injury and mental depression. As we held in *Haskett v. National Biscuit Co.*, 177 Neb. 915, 920, 131 N.W.2d 597, 600-01 (1964), it is within the province of the compensation court to consider both factors when determining the amount of compensation to which the plaintiff is entitled:

> The evidence in this case shows that as a result of the accident of May 2, 1962, the plaintiff suffered an injury to his back, a lumbosacral sprain, and has developed an anxiety hysteria, or conversion reaction, which has resulted in disability. Both Dr. Farrell and Dr. Jones testified that the accident was the precipitating cause of

the psychiatric condition which resulted in the plaintiff's present disability.

There is evidence that the plaintiff was predisposed to develop such a condition, and that the same injury to another person might not have resulted in a similar disability. But that is no defense. Where an accident combines with a preexisting condition to produce disability, the injured workman may recover compensation. Cole v. Cushman Motor Works, 159 Neb. 97, 65 N.W.2d 330.

Upon the record in this case it cannot be said that the findings made by the compensation court were clearly wrong so that they should be disturbed on appeal. *Caradori v. Frontier Airlines*, 213 Neb. 513, 329 N.W.2d 865 (1983). Rather, the evidence supports the finding that the plaintiff was temporarily totally disabled from September 1, 1982, through March 1, 1983, and has sustained a 50-percent permanent partial disability. There was substantial evidence that the plaintiff could do light work and was not permanently totally disabled.

Although none of the medical witnesses testified that the permanent disability of the plaintiff was 50 percent, where the evidence is in conflict, the compensation court may find a percentage of disability within the range of the testimony. See, generally, 3 A. Larson, The Law of Workmen's Compensation § 79.52(c) (1983) and cases cited therein.

In *Thinnes v. Kearney Packing Co.*, 173 Neb. 123, 112 N.W.2d 732 (1962), in reviewing the record de novo, we found that the plaintiff sustained a 35-percent disability as a result of a work-related accident. There, the plaintiff had contended that he was permanently and totally disabled, while the defendant contended that the plaintiff's permanent disability did not exceed 15 percent. In reaching that result this court said: "This finding is based upon all of the factors which enter into earning power and is not limited to the evidence relating to loss of bodily functions." *Id*. at 130, 112 N.W.2d at 736-37. See, also, *Micek v. Omaha Steel Works*, 136 Neb. 843, 287 N.W. 645 (1939). Furthermore, "Triers of fact are not required to take the opinions of experts as binding upon them." *Erving v. Tri-Con Industries*, 210 Neb. 339, 344, 314 N.W.2d 253, 256 (1982).

Rather, such opinions are advisory in character. *Brown v. Globe Laboratories, Inc.*, 165 Neb. 138, 84 N.W.2d 151 (1957).

The parties have raised an issue concerning the attorney fees awarded by the compensation court.

After the one-judge hearing, the compensation court awarded the plaintiff compensation for temporary total disability from and including September 1, 1982, to the date of the hearing, February 17, 1983, and thereafter for so long as the plaintiff remained totally disabled. The defendant filed an application for rehearing, and on rehearing, the compensation court awarded the plaintiff compensation for temporary total disability for 26 weeks and compensation for *permanent partial disability for 274 weeks*. The plaintiff was allowed an attorney fee of $1,500 on rehearing, one judge dissenting.

The award of compensation for permanent partial disability on rehearing under the circumstances in this case entitled the plaintiff to an award of an attorney fee on the rehearing before the compensation court. See, *Earnest v. Lutheran Memorial Hospital*, 211 Neb. 438, 319 N.W.2d 66 (1982); *Sandel v. Packaging Co. of America*, 211 Neb. 149, 317 N.W.2d 910 (1982).

The plaintiff also contends that he was entitled to an award of attorney fees and a penalty for waiting time. The rule is, however, that where a reasonable controversy exists between the parties as to the payment of compensation, the employee is not entitled to statutory penalties for waiting time. *Savage v. Hensel Phelps Constr. Co.*, 208 Neb. 676, 305 N.W.2d 375 (1981). In the case at bar, the compensation court found that a reasonable controversy existed. That was a question of fact, and the finding is supported by the evidence.

The compensation court awarded the plaintiff witness fees at the statutory rate for three witnesses who testified at the hearing, one of whom was a physician. The plaintiff contends that he should have been awarded witness fees in accordance with the contracts between the plaintiff and two expert witnesses who testified by deposition.

Prior to the 1983 amendment to Neb. Rev. Stat. § 48-172 (Reissue 1984), the statute did not contain a specific provision regarding witness fees. In *Inserra v. Village Inn Pancake*

*House*, 197 Neb. 168, 247 N.W.2d 625 (1976), we held that the statute did not authorize the fee of an expert witness to be taxed as costs. Section 48-172 as amended effective August 26, 1983, which was prior to the rehearing in this case, now provides in part:

> When a reasonable attorney's fee is allowed the employee against the employer as provided in section 48-125, the court shall further assess against the employer as costs of the employee, the cost of depositions if admitted into evidence, and may further assess against the employer the fees and mileage for necessary witnesses attending the proceedings at the instance of the employee. Both the necessity for the witness and the reasonableness of the fees shall be approved by the court.

The statute provides for the allowance of fees for "necessary witnesses attending the proceedings" and requires approval by the court of the "reasonableness of the fees."

The fees in question here were for witnesses who did not attend the hearing. The record does not show any abuse of discretion by the compensation court in regard to the award of witness fees as costs.

The plaintiff contends that a letter from one of the defendant's witnesses to the compensation court was an ex parte communication which constituted misconduct. The record fails to show that any prejudice resulted from this incident. See *State v. Bromwich*, 213 Neb. 827, 331 N.W.2d 537 (1983).

From the award on rehearing, the plaintiff appealed to this court, and the defendant cross-appealed. The cross-appeal by the defendant was an appeal within the meaning of Neb. Rev. Stat. § 48-125 (Reissue 1984).

As pertains here, the statute provides:

> If the employer files an application for a rehearing before the compensation court from an award of a judge of the compensation court *and fails to obtain any reduction in the amount of such award*, the compensation court shall allow the employee a reasonable attorney's fee to be taxed as costs against the employer for such rehearing, and the Supreme Court shall in like manner allow the employee a

reasonable sum as attorney's fees for the proceedings in that court.

(Emphasis supplied.) Since the employer has obtained no reduction in the award here, the plaintiff is entitled to an allowance for attorney fees in this court.

The judgment of the compensation court is affirmed, and the plaintiff is allowed the sum of $500 for the services of his attorney in this court.

AFFIRMED.