BRUCE D. HANEY, APPELLEE, V. AARON FERER & SONS, CO.,
APPELLANT.
521 N.W.2d 77

Filed August 23, 1994.   No. A-94-036.

Thomas D. Wulff, of Rickerson, Welch, Wulff & Childers, for appellant.

Phillip G. Wright, of Quinn & Wright, for appellee.

IRWIN, MILLER-LERMAN, and MUES, Judges.

MUES, Judge.

Aaron Ferer & Sons, Co., appeals from a review by the Workers' Compensation Court which upheld the trial judge's award of temporary total disability, permanent partial disability, and vocational rehabilitation benefits to Bruce D. Haney. Ferer argues that there was no competent evidence to show that Haney suffered a 25-percent loss in earning capacity and that Haney's testimony regarding his employment and disability was not credible and therefore was not sufficient to support the court's award. We affirm the review panel's decision.

## FACTS

Bruce D. Haney was employed by Aaron Ferer & Sons, Co., on June 5, 1991, as a laborer torchman, earning $7.40 per hour cutting up metal or performing odd jobs, such as moving railroad ties. On June 5, during the course of his employment, Haney lifted a railroad tie and heard a loud pop in his back, which was followed by shooting pain in his lower back. Haney testified at the hearing that a typical railroad tie weighs approximately 110 pounds. Haney informed his foreman of the accident that day. On June 6, Haney went to see his family doctor, Dr. Scott Blair, who in turn referred him to Dr. Jay Parsow. Haney received treatment approximately twice a month for about a year from Dr. Blair and twice a month from Dr. Parsow. Both doctors prescribed medication and physical therapy. Dr. Parsow diagnosed Haney's condition as mild acute bilateral L5 and S1 radiculopathy. An MRI scan of Haney's lumbar spine revealed disk bulging at the L4-5 area, posteriorly to the left without changes of disk desiccation.

In a letter to Haney's attorney, Dr. Parsow stated that it was his opinion that Haney had reached maximum medical improvement on March 25, 1992. Dr. Parsow stated that Haney would be allowed to go back to work, so long as it was light

work. Dr. Parsow stated that Haney could occasionally lift and carry 20 pounds and could frequently carry 10 pounds and that he could occasionally bend, stoop, crawl, kneel, and squat, but should do no twisting. Dr. Parsow rated Haney's disability as a 12-percent whole body impairment. Ferer's doctor, Dr. Anil Agarwal, examined Haney once. Haney testified that the exam lasted approximately 3 to 5 minutes. As a result of the exam, Dr. Agarwal opined that Haney had reached maximum medical improvement and had suffered a 2-percent whole body impairment. In a letter to Ferer's insurer, Dr. Agarwal stated that Haney could return to work with a lifting limitation of up to 60 pounds.

Dr. Willard Kuehn of Occupational Health Services, employed by Ferer, examined Haney on June 16, 1991, and released him to go back to work with no restrictions, but when Haney returned to work and was required to shovel as part of his job, Haney's back began to hurt again. Dr. Kuehn then reexamined Haney and found that he was in need of physical therapy. Dr. Kuehn released Haney to work with a 20-pound weight-lifting restriction. Haney testified that his own doctor disagreed with Dr. Kuehn's diagnosis and told him he could not return to work yet because he could not perform the tasks required. Haney testified he received a letter sometime in the summer of 1991 from Ferer informing him he had been fired.

The record shows that Haney's work experience is in the area of manual labor. Haney has a high school education and no special training. On September 28, 1991, Haney began working for L & J Auto, washing and vacuuming cars and driving them to auctions, which he described as light-duty work. Haney testified that the heaviest item he was required to lift at his job with L & J Auto was a wash bucket. Haney worked full time for $5 per hour for L & J Auto until approximately August 1992. Haney then began working for Rodney Farm Center in December 1992, driving grain trucks to grain elevators. Haney earned $6.40 per hour while working for Rodney Farm Center. Because the job required him to shovel grain, he could not carry out the tasks of the job and was laid off in March 1993.

Upon a hearing before the Workers' Compensation Court, the trial judge found that Haney had sustained an injury to his

back as a result of an accident arising out of and in the course of his employment and that as a result of such accident, Haney had been temporarily totally disabled from June 6 to September 7, 1991, and temporarily partially disabled from and including September 28, 1991, to and including March 24, 1992. The court found that after March 24, Haney had sustained a 25-percent loss in earning capacity. Ferer received credit for amounts it paid Haney for temporary total disability and temporary partial disability benefits. Ferer appealed the award, which was sustained by the review panel of the Workers' Compensation Court.

## ASSIGNMENTS OF ERROR

Ferer alleges that the trial court erred (1) when it awarded temporary partial disability benefits to Haney during the time Haney was employed by L & J Auto and had been receiving temporary total disability benefits; (2) when it found that Haney sustained a 25-percent loss in earning capacity; and (3) when it found that Haney was incapable of finding suitable, gainful employment and was therefore entitled to vocational rehabilitation benefits.

## STANDARD OF REVIEW

A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the judgment, order, or award; or (4) the findings of fact by the compensation court do not support the order or award. Neb. Rev. Stat. § 48-185 (Cum. Supp. 1992). In determining whether to affirm, modify, reverse, or set aside the judgment of the review panel, a higher appellate court reviews the findings of the single judge who conducted the original hearing. *Pearson v. Lincoln Telephone Co.*, 2 Neb. App. 703, 513 N.W.2d 361 (1994).

A decision by the compensation court after review has the same force and effect as a jury verdict, and the court's findings of fact will not be set aside unless, after reviewing the record in the light most favorable to the successful party, a higher

appellate court determines that those findings are clearly erroneous. See, also, *Wiese v. Becton-Dickinson Co.*, 239 Neb. 1033, 480 N.W.2d 156 (1992).

## ANALYSIS

*Temporary Partial Disability Benefits.*

Ferer's first assignment of error seems to be based not on an argument that Haney was not temporarily partially disabled during the time for which he was awarded benefits, but instead appears to be based on the contention that Haney's testimony on collateral matters during the hearing lacked credibility. We find that Ferer's first assignment is without merit. In a bench trial, the judge sitting as the trier of fact is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Waite v. A. S. Battiato Co.*, 238 Neb. 151, 469 N.W.2d 766 (1991).

The trial court awarded temporary partial disability benefits from September 28, 1991, Haney's first day of employment with L & J Auto until March 25, 1992, when Dr. Parsow determined Haney had reached maximum medical improvement. The trial court awarded Ferer credit for its payment to Haney of temporary total disability benefits from June 13 to 16, 1991, and July 6, 1991, through April 4, 1992; temporary partial disability benefits paid to Haney from June 17 to July 5, 1991; and 1 week of permanent partial disability benefits from April 25 through May 1, 1992. Ferer alleges in its brief that it paid temporary total disability benefits to Haney in reliance on Haney's answers to interrogatories filed in November 1991, in which Haney stated that he had earned no other income after his employment with Ferer. We note that Ferer was credited with all payments to Haney, and therefore, Ferer received credit against the judgment for any temporary total disability benefits it may have erroneously paid. The trial court's findings of fact regarding the time period during which Haney suffered temporary partial disability are supported by sufficient competent evidence in the record, and therefore, the court's findings of fact were not clearly erroneous. See *Wiese, supra.* We therefore affirm the trial court's award to Haney of temporary partial disability benefits.

*Loss of Earning Capacity.*

Ferer's second assignment of error alleges that the trial court erred when it made a finding of loss of earning power without the testimony of a vocational rehabilitation expert. Ferer claims that it was necessary to present expert testimony to show the causal connection between Haney's injury and his loss of earning capacity and the extent of Haney's loss of earning capacity. Ferer argues that the only expert testimony regarding Haney's permanent disability was Dr. Parsow's rating of 12 percent permanent disability and Dr. Agarwal's rating of 2 percent permanent disability. In support of its argument, Ferer cites Judge Buchholz' dissent from the review panel's opinion, in which the court affirmed the trial court's order. In his dissent, Judge Buchholz stated:

> The question of whether a judge of this Court has, ipso facto, the expertise and power to make a specific loss of earning power assessment based solely on bodily impairment ratings of less than total, rendered by physicians, physical restrictions, and on his or her own presumed "expertise as a trier of fact," is both novel and intriguing. . . .

> It is my opinion that the making of a loss of earning power assessment involves technical and specialized knowledge and skills, and, as such, is typically an activity for qualified experts.

There is no dispute among the parties upon appeal that Haney sustained a back injury which arose out of and in the course of his employment, i.e., that Haney's injury was *caused* by the employment accident at the Ferer job. While an expert witness' testimony may be necessary to establish the *cause* of a claimed injury, the compensation court does not need to depend on expert testimony to determine the degree of disability, but instead may rely on the testimony of the claimant in determining the extent of the disability. *Luehring v. Tibbs Constr. Co.*, 235 Neb. 883, 457 N.W.2d 815 (1990).

Loss of earning capacity under Neb. Rev. Stat. § 48-121(2) (Reissue 1988) is not synonymous with loss of bodily function. *Sidel v. Travelers Ins. Co.*, 205 Neb. 541, 288 N.W.2d 482 (1980). Neither is the loss of wages synonymous

with loss of earning power. *Id*. Instead, awards for partial disability are measured by the reduction in earning power or employability. *Id*.

> " 'Earning power' . . . includes eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work, as well as the ability of the work[er] to earn wages in the employment in which he [or she] is engaged or for which he [or she] is fitted. . . . If, after injury, an employee receives the same or higher wages than before injury, it is indicative, although not conclusive, of the fact that his [or her] earning power has not been impaired."

*Id*. at 546, 288 N.W.2d at 485.

It is well-established law that there is no numerical formula for determining a worker's earning power following an injury to the body as a whole. *Thom v. Lutheran Medical Center*, 226 Neb. 737, 414 N.W.2d 810 (1987). In applying the principle that compensation is awarded not on physical disability but on earning capacity, the Nebraska Supreme Court has consistently allowed the Workers' Compensation Court to consider the four elements it has determined comprise earning power: (1) the worker's eligibility to procure employment, (2) the worker's ability to hold the job obtained, (3) the worker's capacity to perform the tasks of such job, and (4) the worker's ability to earn wages in employment for which the worker is engaged or fitted. In *Sidel*, the evidence presented to the court established that the claimant's doctor determined the claimant had incurred a back injury resulting in a 10-percent disability. In addition, the doctor noted that because of a preexisting condition, which was not work related, the claimant's overall impairment was between 20 and 25 percent. The compensation court awarded a 20-percent permanent partial disability, and the employer appealed, claiming that the compensation court wrongly considered the noncompensable impairment in its determination of the claimant's percentage of partial disability. The *Sidel* court disagreed.

> [T]he surgeon recommended that plaintiff "be employed in a job which does not require heavy lifting, stooping or twisting of his back which could be in the present

company, if such a job is available."

The evidence shows that plaintiff is a high school graduate. Most of his employment history has been doing manual labor similar to that while employed with Spencer Foods. However, he has also done some work as a mechanic in garages, although not specifically trained in that area. He testified that after the lumbar laminectomy his ability to lift was reduced and he was given lighter work. . . .

. . . .

In this case, the Workmen's Compensation Court was entitled to take into consideration not only the 10 percent loss of bodily function because of the lumbar laminectomy, but also the facts that the plaintiff was engaged in common labor and that that was his primary skill. His ability to lift was impaired and his employability was thus reduced.

205 Neb. at 544-47, 288 N.W.2d at 484-86.

In *Aldrich v. ASARCO, Inc.*, 221 Neb. 126, 375 N.W.2d 150 (1985), the evidence before the compensation court showed that the plaintiff injured his back while employed as a laborer for ASARCO. The plaintiff had been employed by ASARCO as a laborer for approximately 14 years, had not completed the eighth grade, and could not read or write well. The plaintiff had been examined by ASARCO's physician, who rated the plaintiff's disability as a 15-percent permanent partial disability to the whole body. The plaintiff's own physician had restricted the plaintiff's lifting to not more than 20 pounds. The *Aldrich* court upheld the compensation court's determination that the plaintiff had sustained a 30-percent loss in earning power "based upon 'the extent of plaintiff's physical impairment as set forth by Dr. O'Neil, the wages earned by the plaintiff at the time of injury, the work restrictions imposed on him by Dr. O'Neil, and plaintiff's limited educational background . . . .' " *Id.* at 129, 375 N.W.2d at 152.

Finally, in *Thinnes v. Kearney Packing Co.*, 173 Neb. 123, 112 N.W.2d 732 (1962), the evidence before the compensation court was an opinion by the claimant's doctor that the claimant had incurred a physical impairment of between 10 and 15

percent. The court noted:

> The plaintiff is 59 years of age. He has a third grade education. He commenced farming when he was 22 years old and continued until 1937. He has worked on railroad section gangs and extra gangs and has done roofing and painting. He has worked for the defendant at the packing plant for about 14 years. At the time he was injured he was slaughtering and butchering cattle. This work, as done at defendant's plant, is hard manual labor which requires heavy lifting at times. There is other work at the plant such as boning, grinding, packaging, etc., which requires less physical effort and strength, but the defendant's business operation is such that the employees are assigned to whatever work there is to be done at the time and some of it requires heavy lifting and strength.

*Id.* at 126-27, 112 N.W.2d at 735.

The court held that there was evidence in the record to show that the claimant could no longer perform such heavy lifting. The compensation court awarded the claimant with compensation based upon a 15-percent disability. The Nebraska Supreme Court overruled the compensation court's finding and awarded the claimant benefits based upon a 35-percent loss in earning capacity. In doing so, the court stated:

> It is difficult to determine the extent of the permanent partial disability resulting from the accident in this case upon the evidence which is available to us. The record in this case does not contain any satisfactory direct evidence as to the permanent loss in earning power which the plaintiff has sustained. There is opinion evidence as to what his permanent losses in bodily functions are.

*Id.* at 129, 112 N.W.2d at 736. The court found that the claimant had sustained a 35-percent loss in earning power, "based upon all of the factors which enter into earning power and [such a finding] is not limited to the evidence relating to loss of bodily functions." *Id.* at 130, 112 N.W.2d at 736-37.

In neither *Thinnes*, *Aldrich*, nor *Sidel* is there any indication that an expert testified as to a percentage loss of earning capacity. Instead, as the Nebraska Supreme Court has

reiterated over and over again, loss of earning power is a question of fact, not measured solely by loss of bodily function, or by reduction in wages alone, but by a myriad of factors set forth in the case law. See, *Sidel v. Travelers Ins. Co.*, 205 Neb. 541, 288 N.W.2d 482 (1980); *Thinnes, supra.* Our research has uncovered no case law which directly supports Ferer's argument that the compensation court must depend upon an expert's assessment as to the extent of the claimant's loss of earning capacity in order to empower an award of partial disability under § 48-121(2).

In the case at hand, the evidence shows that before he was injured, Haney had earned $7.40 per hour and that after his injury, he obtained a job for 33 percent less in salary, or $5 per hour. While employed at Rodney Farm Center, Haney earned $6.40 per hour, or 14 percent less than he earned at Ferer. In addition, Haney was laid off from Rodney Farm Center because he could not perform the tasks required due to his back injury. Haney has a high school education and has been given work restrictions by both Ferer's doctors and Haney's own physicians. The trial court stated that it had "carefully considered the various impairment ratings by the physicians, the work restrictions and the other factors used to determine loss of earning capacity" as set forth in the case law. We find that the court did not need the expert testimony of a vocational rehabilitation counselor to determine earning capacity loss, as the evidence in the record was clear that Haney was placed on work restrictions, had been diagnosed with various impairment ratings, and had a high school education and that his previous work experience was limited to manual labor positions. The trial court's finding of a 25-percent loss of earning capacity is supported by sufficient competent evidence in the record, and after reviewing the record in the light most favorable to Haney, we cannot say that the trial court's finding was clearly erroneous.

*Vocational Rehabilitation Benefits.*

The trial court stated that "[i]n light of [Haney's] inability to find continuous employment since the date of the accident at a similar or like wage with [Haney's] restrictions, the Court finds

that [Haney] is a candidate for vocational rehabilitation." Ferer alleges that the trial court erred when it found that Haney was unable to find suitable gainful employment and was therefore entitled to vocational rehabilitation benefits. Ferer argues that although Haney earned less while employed by L & J Auto, his salary combined with his workers' compensation benefits resulted in substantially greater income than that he earned at Ferer. The goal of the vocational rehabilitation statute, however, is not to award only those employees whose total income sources, including disability benefits, equal the amount of salary earned before such employees were injured, but, rather, the purpose is the "restoration of the injured employee to gainful employment." Neb. Rev. Stat. § 48-162.01 (Reissue 1988).

Section 48-162.01 provides:

> When as a result of the injury an employee is unable to perform work for which he or she has previous training or experience, he or she shall be entitled to such vocational rehabilitation services . . . as may be reasonably necessary to restore him or her to suitable employment.

A determination as to whether an injured employee is able to perform the work for which that employee was previously trained is a question of fact to be determined by the compensation court, and that determination will not be disturbed by an appellate court unless the finding is clearly erroneous. *Willuhn v. Omaha Box Co.*, 240 Neb. 571, 483 N.W.2d 130 (1992). In *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991), the Nebraska Supreme Court found that the phrase "restore him or her to suitable employment" has been defined in other jurisdictions to mean employment similar in remuneration to that earned prior to the injury and which is compatible with the employee's preinjury occupation, age, education, and aptitude. The employer in *Yager* argued that because the employee had obtained a minimum-wage job elsewhere, he had suitable employment and was, therefore, not entitled to vocational rehabilitation benefits. The court stated:

> We hold as a matter of law that accepting a job paying minimum wage does not automatically "restore" a claimant to "suitable" or "gainful" employment pursuant

to § 48-162.01, where the claimant's previous employment was at a significantly higher wage. At the time of his injury, plaintiff was earning $220 per week and was an able, strong construction worker, with possibilities of progressing in that type of manual labor. . . .

It is inappropriate to hold, from the mere fact that the injured worker has accepted a job resulting in a $104 weekly wage, that, by that act alone, he has foreclosed himself from some training that would enable him to return to the approximate level of the salary he was earning when he was injured. The difference between the wages earned before and after the injury is only $116 per week, but proportionately it is a large difference. To ignore such a difference is to ignore the statutory goal of returning the worker to suitable, that is, comparable, employment. A finding that claimant currently maintains a minimum-wage job is not, in and of itself, sufficient to support a denial of vocational rehabilitation benefits.

236 Neb. at 896-97, 464 N.W.2d at 340-41.

In the case at hand, Haney had earned approximately $298 per week prior to his injury at Ferer. When Haney worked for L & J Auto, he earned approximately $200 per week. As a result, Haney's wages were reduced by one-third. Proportionately, there is a large difference between the wages Haney earned before and after his injury. The evidence is clear that Haney cannot return to a manual labor position that requires heavy lifting. There is sufficient competent evidence to support the trial court's finding that Haney was eligible for vocational rehabilitation. Viewing the record in the light most favorable to Haney, we cannot say the trial court was clearly erroneous when it found that vocational rehabilitation was reasonably necessary to restore Haney to suitable employment.

## CONCLUSION

We note that the trial court is the sole judge of the credibility of the witnesses, and therefore, Ferer's first assignment of error, based on Haney's credibility, is without merit. Second, we find that the trial court was not clearly erroneous when it found that Haney sustained a 25-percent loss in earning capacity. Finally,

we find that the trial court was not clearly erroneous when it found that Haney was unable to perform work for which he had previous training or experience, and therefore vocational rehabilitation benefits could be awarded to restore Haney to suitable employment. We therefore affirm.

Pursuant to Neb. Rev. Stat. § 48-125 (Cum. Supp. 1992), an award of attorney fees to Haney is appropriate, and the same will be made upon the filing of a motion in compliance with Neb. Ct. R. of Prac. 9F (rev. 1992).

AFFIRMED.